**John DOE, by and Through Guardian Ad Litem, Yvonne SUBIA, Appellant,**

v.

**KANSAS CITY, MISSOURI SCHOOL DISTRICT, Respondent.**

**No. WD 73800.**

Missouri Court of Appeals, Western District.

April 17, 2012.

Application for Transfer to Supreme Court Denied May 29, 2012.

Application for Transfer Denied Aug. 14, 2012.

Amy K. Maloney, Anne W. Schiavone, Kirk D. Holman, and Matthew J. O'Laughlin, Kansas City, MO, for appellant.

Trina R. Leriche and Sara B. Anthony, Kansas City, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge Presiding, ALOK AHUJA, Judge and DALE YOUNGS, Special Judge.

LISA WHITE HARDWICK, Chief Judge.

John Doe, by and through his guardian ad litem, Yvonne Subia, appeals the dismissal of his petition for damages against the Kansas City, Missouri School District ("School District") for violating the Missouri Human Rights Act ("MHRA"), Chapter 213, RSMo.[1] On appeal, Doe contends he stated a claim under the MHRA because the School District's failure to protect him from sexual harassment and sexual assault by a fellow student constituted sex discrimination that deprived him of the full, free, and equal use and enjoyment of the School District's elementary school, a public accommodation. For reasons explained herein, we reverse the circuit court's dismissal and remand the case to the circuit court.

FACTUAL AND PROCEDURAL HISTORY

Doe is a student at Swinney Elementary School, which is part of the School District. In October 2009, he filed a charge of discrimination against the School District with the Missouri Commission on Human Rights ("the Commission"). Thereafter, Doe received a Notice of Right to Sue from the Commission and filed a petition against the School District in October 2010. In his petition, Doe alleged that, beginning in May 2009, he was sexually harassed and sexually assaulted by another student on multiple occasions during school hours on school grounds. Doe asserted the perpetrator climbed under the stalls in the boys' restroom to commit the sexual harassment and sexual assaults.

Doe further alleged that school administrators, as well as the teachers and para-professionals responsible for supervising him and the perpetrator, had knowledge of the perpetrator's inappropriate and sexualized behavior and his aggressive tendencies. Despite knowledge of the perpetrator's sexual tendencies, school personnel permitted the perpetrator to use the restroom at the same time as other male students. Consequently, the perpetrator had the opportunity to sexually harass and sexually assault him. Doe contended that, as a result of the sexual harassment and sexual assaults, he has experienced emotional distress in the form of anxiety, fear, and depression, among other manifestations.

Doe asserted the School District's acts and omissions violated the MHRA. Specifically, he alleged the sexual harassment and sexual assaults occurred on the basis of his gender and constituted sex discrimination. He further claimed that Swinney Elementary School, as part of the School District, is a public place of accommodation, and that he was deprived of the full, free, and equal use and enjoyment of the school and its services by way of the School District's actions and inactions. Doe asserted that the school personnel were agents, servants, and employees of the School District and, therefore, that the School District was liable for their actions under the doctrine of *respondeat superior*. Doe sought compensatory and punitive damages.

The School District moved to dismiss Doe's petition. Following a hearing, the circuit court dismissed the petition on the

---

1. All statutory citations are to the Revised Statutes of Missouri 2000, unless otherwise indicated.

basis that Doe failed to state a cause of action under Missouri law against the School District. Doe appeals.

## STANDARD OF REVIEW

 Appellate review of a dismissal for failure to state a claim is *de novo*. *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). We accept the plaintiff's allegations in the petition as true, and "no attempt is made to weigh any facts alleged as to whether they are credible or persuasive." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 101 (Mo. banc 2010). Indeed, we construe the petition liberally and accord it " 'all reasonable inferences deducible from the facts stated.' " *Lakeridge Enters., Inc. v. Knox*, 311 S.W.3d 268, 271 (Mo.App.2010) (citation omitted). "The petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action or of a cause that might be adopted in that case." *Keveney*, 304 S.W.3d at 101.

## ANALYSIS

In Point I, Doe contends the circuit court erred in dismissing his petition because the MHRA prohibits student-on-student sexual harassment that rises to the level of sex discrimination in a public accommodation, and he pled sufficient facts to state such a claim under Section 213.065 of the MHRA. The relevant portions of Section 213.065 provide:

1. All persons within the jurisdiction of the state of Missouri are free and equal and shall be entitled to the full and equal use and enjoyment within this state of any place of public accommodation, as hereinafter defined, without discrimination or segregation on the grounds of race, color, religion, national origin, sex, ancestry, or disability.

2. It is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person, or to attempt to refuse, withhold from or deny any other person, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation, as defined in section 213.010 and this section, or to segregate or discriminate against any such person in the use thereof on the grounds of race, color, religion, national origin, sex, ancestry, or disability.

No Missouri case has addressed whether this statute covers a claim against a public school district for sex discrimination based on student-on-student sexual harassment.

Whether Section 213.065 covers such a claim is a matter of statutory interpretation. The primary goal of statutory interpretation is to ascertain the legislature's intent from the language used and give effect to that intent. *Ridinger v. Mo. Bd. of Prob. & Parole*, 189 S.W.3d 658, 664 (Mo.App.2006). We must interpret statutes consistently with the legislature's obvious purpose. *United Asset Mgmt. Trust Co. v. Clark*, 332 S.W.3d 159, 167 (Mo.App. 2010). In ascertaining that purpose, we do not read statutory provisions in isolation but, rather, " 'we construe the provisions of a legislative act together and read a questioned phrase in harmony with the entire act.' " *Id.* (citation omitted).

 Additionally, in determining the legislature's intent, we must keep in mind that Section 213.065 of the MHRA is a remedial statute. *Mo. Comm'n on Human Rights v. Red Dragon Rest., Inc.*, 991 S.W.2d 161, 166–67 (Mo.App.1999). "A remedial statute is one 'enacted for the protection of life and property, or which introduce[s] some new regulation conducive to the public good.' " *State ex rel. Ford v. Wenskay*, 824 S.W.2d 99, 100 (Mo.App. 1992) (citation omitted). As we noted in *Red Dragon*, Section 213.065.1's man-

date—that all persons are entitled to the full and equal use and enjoyment of public accommodations within this state without discrimination—was enacted in the interest of the public welfare and is conducive to the public good. 991 S.W.2d at 167. Therefore, because Section 213.065 is a remedial statute, we should interpret it " 'liberally to include those cases which are within the spirit of the law and all reasonable doubts should be construed in favor of applicability to the case.' " *Id.* at 166–67 (quoting *Wenskay,* 824 S.W.2d at 100).

### A Public School is a Public Accommodation

Section 213.065 prohibits discrimination in "any place of public accommodation." Section 213.010(15) defines "places of public accommodation" as "all places or businesses offering or holding out to the general public, goods, services, privileges, facilities, advantages or accommodations for the peace, comfort, health, welfare and safety of the general public or such public places providing food, shelter, recreation and amusement[.]"

The statute provides a non-exclusive list of the types of places, businesses, and establishments the legislature intended to include within this definition. § 213.010(15)(a)–(f). Doe argues that Swinney Elementary School fits under the type of establishment described in Section 213.010(15)(e), which is "[a]ny public facility owned, operated, or managed by or on behalf of this state or any agency or subdivision thereof, or any public corporation; and any such facility supported in whole or in part by public funds[.]" We agree.

■ Missouri law vests title and control of school buildings in the school districts in which the property is located. § 177.011. Thus, school districts own, operate, and manage the school buildings within their districts. Although the legislature did not define the terms "subdivision" and "public corporations" in the statute, Missouri courts have long considered public school districts to be both subdivisions of this state and public corporations. See *Sch. Dist. of Kansas City v. Kansas City,* 382 S.W.2d 688, 697 (Mo. banc 1964); *Kansas City v. Sch. Dist. of Kansas City,* 356 Mo. 364, 201 S.W.2d 930, 933 (1947); *State ex inf. McKittrick v. Whittle,* 333 Mo. 705, 63 S.W.2d 100, 102 (Mo. banc 1933); and *Consol. Sch. Dist. No. 1 of Jackson Co. v. Bond,* 500 S.W.2d 18, 21 (Mo.App.1973). We presume that, when the legislature enacted Section 213.010(15)(e), it was aware that judicial opinions had interpreted the terms "subdivision" and "public corporation" to include public school districts and intended the terms to be construed in the statute consistently with those opinions. *State v. Harris,* 156 S.W.3d 817, 823 (Mo.App.2005). Moreover, public school districts are supported in part by public funds from the state. See Mo. CONST. art. IX, § 3(b). Because Doe alleged that Swinney Elementary School is a public facility that is owned, operated, or managed by a public school district, which is a subdivision of this state and a public corporation, he sufficiently pled that Swinney Elementary School is a place of public accommodation as defined in Section 213.010(15)(e).

The School District contends, however, that public schools are specifically excluded as places of public accommodation by Section 213.065.3, which states:

3. *The provisions of this section shall not apply to* a private club, a place of accommodation owned by or operated on behalf of a religious corporation, association or society, or other *establishment which is not in fact open to the public,* unless the facilities of such establishments are made available to the customers or patrons of a place of public ac-

commodation as defined in section 213.010 and this section.

(Emphasis added.) The School District argues that an elementary school building is "not in fact open to the public" because members of the general public do not have unfettered and unlimited access to it. The School District notes that Missouri law contains limits on students' access to public schools based upon age, residency, and immunization requirements, and school districts restrict the general populace's access to school buildings to protect the safety and welfare of students. The issue, then, is whether a place of public accommodation must be accessible by *all* members of the public to. be "open to the public."

Resolution of this issue depends upon the interpretation of the word "public." Although the MHRA does not define "public," the Missouri Supreme Court has interpreted the term in considering whether restrictions on access to a service defeat the public character of the service. In *J.B. Vending Co., Inc. v. Dir. of Revenue,* 54 S.W.3d 183, 184–85 (Mo. banc 2001), the Court was asked to determine whether a statute imposing a sales tax on entities in which "rooms, meals or drinks are regularly served to the public," Section 144.020.1(6), applies to vending machines and cafeterias in manufacturing plants and business facilities that are restricted-access buildings. In finding that the tax did apply, the Court based its decision, in part, on various definitions of the word "public":

The word "public" conveys several meanings. While the word "public" can refer to the entire populace, it can also refer to "[a] particular body or section of the people; often, .... a clientele ..." *Webster's New Int'l Dictionary* 2005 (2d Ed.1952). It can also refer to "a group of people distinguished by common interests or characteristics." *Webster's*

*Third New Int'l Dictionary* 1836 (1993). "In another sense the word does not mean all the people, nor most of the people, nor very many of the people of a place, but so many of them as contradistinguishes them from a few." *Black's Law Dictionary* 1227 (6th Ed.1990).

*J.B. Vending,* 54 S.W.3d at 186. The Court noted these definitions are consistent with prior case law "specifically recognizing that an entity can be said to serve the public even if it serves only a subset or segment of the public and is subject to regulation on that basis." *Id.* at 186–87 (citing *State ex rel. Anderson v. Witthaus,* 340 Mo. 1004, 102 S.W.2d 99 (Mo. banc 1937); *Voelker v. St. Louis Mercantile Library Ass'n,* 359 S.W.2d 689 (Mo.1962); and *Salvation Army v. Hoehn,* 354 Mo. 107, 188 S.W.2d 826, 830 (Mo. banc 1945)).

In finding that the taxpayer, J.B., served the "public" in spite of the limited access to its establishment, the Court stated, "J.B. holds itself out to serve those members of the public who come into its establishment, and the fact that some third party limits those who are able to reach that establishment does not mean that J.B. does not serve meals and drinks to the public. It does." *Id.* at 187. The Court found that, to interpret the statute otherwise could result in restaurants claiming they do not sell to the public because they serve only persons with reservations, or sports arena concession stand operators asserting they do not sell to the public because they serve only those with tickets to the arena's event. *Id.* at 188. The Court stated that such an interpretation would be contrary to the legislature's intent, as it would "effectively nullify the provision for imposing a tax on the sale of meals or drinks to the public." *Id.* at 188–89.

Similarly, in this case, we find that limiting the phrase "open to the public" in

Section 213.165.3 to mean accessible by *all* members of the populace would be contrary to the legislature's intent and would effectively nullify the prohibition against discrimination in public accommodations. Many of the places of public accommodation listed Section 213.010(15)(a)–(f) limit access to their facilities to a subset of the general population. Restaurants restrict minors from access to areas in which alcoholic beverages are served and exclude persons who do not comply with dress codes. Resorts, movie theaters, concert halls, and amusement parks impose age and height restrictions on patrons. Nevertheless, the legislature has expressly deemed these facilities to be "places of public accommodation." § 213.010(15)(a), (b), (d).

The Missouri Constitution mandates the establishment and maintenance of "free public schools for the gratuitous instruction of all persons in this state within ages not in excess of twenty-one as prescribed by law." Mo. CONST. art. IX, § 1(a). As a free public school, Swinney Elementary School holds itself out as a facility that provides such gratuitous instruction to Missouri citizens under the age of twenty-one. That access to the school is subject to state law and the School District's restrictions does not defeat the public character of the school—it still serves a subset of the public. Doe sufficiently pled that Swinney Elementary School is, in fact, open to the public and is a public accommodation under Chapter 213.

### The MHRA Prohibits Sex Discrimination in Public Accommodations

Section 213.065.1 provides that all persons within the state's jurisdiction are entitled to full and equal use and enjoyment of public accommodations without discrimination. The MHRA defines "discrimination" as "any unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." § 213.010(5). The MHRA confers upon the Commission the power "[t]o seek to eliminate and prevent discrimination because of race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." § 213.030.1(1). Doe alleged in his petition that he was subjected to sex discrimination at Swinney Elementary School. He filed his charge of discrimination in the Commission on this basis and subsequently received his Notice of Right to Sue.

■ The School District contends that Doe's claim necessarily fails and that the Commission was without jurisdiction to issue the Notice of Right to Sue because the MHRA's definition of "discrimination" in Sections 213.010(5) and 213.030.1(1) limits the context in which such claims of discrimination can occur. Specifically, the School District argues the portion of the definition that reads "as it relates to employment, disability, or familial status as it relates to housing" limits *all* types of discrimination—including sex discrimination—as actionable under the MHRA only if such discrimination occurs in the context of "employment, disability, or familial status as it relates to housing."

The School District's argument misinterprets the statute. The MHRA's definition of discrimination prohibits unfair treatment on nine bases: race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing. The phrase "as it relates to employment" limits only *age* discrimination claims to the employment context. Likewise, the term "disability" refers merely to a prohibited basis for discrimination and not to a context to which the other prohibited bases for discrimination are limited. Lastly, the

phrase "as it relates to housing" limits only *familial status* discrimination claims to the housing context. When read properly, the plain language of Section 213.010(5) does not limit a claim of sex discrimination to only such discrimination as occurs in "employment, disability, or familial status as it relates to housing." Similarly, the plain language of Section 213.030.1(1) does not limit the Commission's jurisdiction to only such claims of sex discrimination as occur in "employment, disability, or familial status as it relates to housing." The MHRA prohibits sex discrimination in public accommodations. Thus, the Commission had jurisdiction over Doe's claim of sex discrimination in his public elementary school, and its Notice of Right to Sue allowing Doe to bring this action was valid.

### Section 213.065 Encompasses Discrimination Based on Peer Sexual Harassment

Doe contends the plain language of the public accommodations provision prohibits sex discrimination based on student-on-student sexual harassment. Section 213.065.2 states that it is unlawful for "any person, directly or indirectly, to . . . deny any other person . . . any of the accommodations, advantages, facilities, services, or privileges made available in a place of public accommodation, or to . . . discriminate against any such person in the use thereof on the grounds of . . . sex."

Given this language, we note that the statute prohibits a person from "directly or indirectly" denying another person any of the benefits of a public accommodation. Clearly, the statute contemplates liability for those who personally engage in the discriminatory acts that result in the denial. Because it alternatively prohibits a person from "indirectly" denying the benefits of a public accommodation, the statute also contemplates liability for a party who

does not personally engage in the discriminatory acts but who is responsible for the denial of the advantages, facilities, services, or privileges of a public accommodation that results from another's discriminatory acts. In his petition, Doe asserted that the School District was liable under this indirect theory, as he claimed that the School District, by its actions and inactions in failing to protect him from the harassment and assaults, was responsible for denying him the full and equal use and enjoyment of the public school and its services.

The School District argues that Doe is attempting to hold it liable for the perpetrator's conduct and, in doing so, has failed to plead facts establishing that the District was vicariously liable for the perpetrator's conduct under the doctrine of *respondeat superior*. Doe's petition alleged that he was deprived of the full and equal use and enjoyment of the school and its services "by way of the [School District]'s actions and inactions" in failing to protect him from the perpetrator. These allegations indicate that Doe is not trying to hold the School District liable for the perpetrator's conduct but is instead trying to hold the School District liable for its own conduct—that is, its "decision to remain idle in the face of known student-on-student harassment in its schools." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). Because Doe is attempting to hold the School District liable for its own conduct, he did not need to plead facts establishing that the School District was vicariously liable for the perpetrator's conduct under the doctrine of *respondeat superior*.

■ We agree with Doe that Section 213.065.2's prohibition against indirectly denying another of the benefits of a public accommodation encompasses a claim against a school district for student-on-

student sexual harassment. A school district exercises significant control over its students through its disciplinary policy. *Davis*, 526 U.S. at 646, 119 S.Ct. 1661. This is especially true where, as in this case, the harassment and assaults were alleged to have taken place during school hours on school grounds. Because it has such control over its students, a school district's failure to take prompt and effective remedial action to address a student's sexually harassing and sexually assaulting another student has the potential to deny the aggrieved student the full and equal use and enjoyment of the advantages, facilities, services, and privileges of the public school.

This interpretation of Section 213.065.2 is within the spirit of the public accommodations law, as it furthers the legislature's broad remedial goal of ensuring that all persons within the state's jurisdiction have full and equal use and enjoyment of any place of public accommodation without discrimination. § 213.065.1.[2] Moreover, it is within the spirit of the MHRA as a whole, as the Act prohibits sexual harassment in other settings, specifically, the workplace. § 213.055.1(1)(a); *Gilliland v. Mo. Athletic Club*, 273 S.W.3d 516, 521 n. 8 (Mo. banc 2009) (noting that sexual harassment is a form of sex discrimination under the MHRA). The MHRA's prohibition against sexual harassment in the workplace extends to render an employer liable for sexual harassment committed by one employee against another employee. *Barekman v. City of Republic*, 232 S.W.3d 675, 679 (Mo.App.2007). Undoubtedly, the

right of a student to receive an education free from sexual harassment is as important as the right of an employee to be free from such harassment in the workplace. *L.W. ex rel. L.G. v. Toms River Reg'l Schools Bd.*, 189 N.J. 381, 915 A.2d 535, 547 (2007). Thus, in light of Section 213.065's plain language and its broad remedial goal, we find that the public accommodations statute encompasses a claim against a school district for student-on-student sexual harassment in a public school.

### Standard for Determining Liability for Student–on–Student Sexual Harassment

Doe contends the standard for determining whether a school district should be held liable for student-on-student sexual harassment should be the same standard as that for determining whether an employer is liable under the MHRA for the sexual harassment of one co-worker by another. An employer is liable under Section 213.055.1(1)(a) " 'for the sexual harassment of one co-worker by another if the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.' " *Barekman*, 232 S.W.3d at 679 (citation omitted). To prevail on this type of sexual harassment claim under Section 213.055.1(1)(a) of the MHRA, a plaintiff must allege and prove:

(1) he is a member of a protected group; (2) he was subjected to unwelcome sexual harassment; (3) his gender was a contributing factor in the harassment; (4) a term, condition, or privilege of his employment was affected by the harass-

---

**2.** We also note that, outside of the MHRA, the legislature has enacted Section 160.775, RSMo Cum.Supp.2011, which requires every school district in the state to adopt an antibullying policy. Section 160.775.2 defines "bullying" as "intimidation or harassment that causes a reasonable student to fear for his or her physical safety." This statute indi-

cates that the legislature recognizes that harassment, a form of bullying, is a problem facing the state's educational system. Interpreting Section 213.065.2 to prohibit student-on-student sexual harassment will further promote what the legislature describes as its "assumption that all students need a safe learning environment." § 160.775.3.

ment; and (5) the [employer] knew or should have known of the harassment and failed to take appropriate action. *Barekman,* 232 S.W.3d at 679. Doe argues that holding a school district liable for student-on-student sexual harassment under the "knew or should have known" standard used in employment cases is consistent with Section 213.065.2's broad language prohibiting even indirect sex discrimination in public accommodations and furthers the MHRA's remedial purpose of accomplishing the greatest public good.

The Missouri School Boards Association ("the Association"), as *amicus curiae* for the School District, contends the applicable standard of liability is not the "knew or should have known" standard applied in MHRA co-worker sexual harassment cases but, rather, is the actual knowledge standard applied in actions brought under Title IX of the Education Amendments of 1972 ("Title IX"). Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In *Davis,* the United States Supreme Court addressed whether Title IX allows a private action for damages against a school board—a "funding recipient"—based upon student-on-student sexual harassment. 526 U.S. at 633, 119 S.Ct. 1661. The Court held that such an action may lie, "but only where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." *Id.*

In rejecting the lower "knew or should have known" standard, the Court explained that the asserted claim was a judicially-implied private right of action under Title IX, which was enacted pursuant to Congress's authority under the Spending Clause. *Id.* at 639–40, 119 S.Ct. 1661. As an exercise of Congress's spending power, Title IX is contractual in nature in that, in return for federal funds, funding recipients agree to comply with federally-imposed conditions. *Id.* at 640, 119 S.Ct. 1661. To allow a private damages action against funding recipients for non-compliance with those conditions, funding recipients must have "adequate notice that they could be liable for the conduct at issue." *Id.* This is because funding recipients cannot knowingly accept the terms of Title IX's "putative contract" if they are unaware of the conditions imposed or are unable to ascertain what is expected of them. *Id.* Furthermore, as the Court noted in *Gebser v. Lago Vista Independent School District,* 524 U.S. 274, 289, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), Title IX's express system of enforcement by administrative agencies requires notice to the funding recipient and an opportunity to come into voluntary compliance. Therefore, it would be inconsistent if the judicially-implied system of enforcement, i.e., the private right of action, allowed substantial liability without regard to the funding recipient's knowledge or its corrective actions upon receiving notice. *Id.* Requiring plaintiffs in a private right of action to prove that the funding recipient had actual knowledge of the harassment and acted with deliberate indifference toward it is consistent with Title IX's express remedial scheme requiring notice and an opportunity to rectify the violation. *Id.* at 290, 118 S.Ct. 1989.

We do not have these concerns in claims asserted under the MHRA. Unlike Title IX, the MHRA creates an express cause of action for damages for sex discrimination that is not contingent upon the receipt of federal or state funds. § 213.111. While the receipt of state funds may be relevant to whether an entity is a public accommodation under Section 213.010(15), the MHRA

does not contain provisions like those in Title IX that require funding recipients to receive notice of discriminatory acts that may subject it to liability or that stay enforcement proceedings until an agency has determined that voluntary compliance is unobtainable. See *Gebser*, 524 U.S. at 288, 118 S.Ct. 1989.

Nevertheless, the School District and the Association argue the "knew or should have known" standard makes sense only in the employment context due to the control employers assert over their employees—control they claim school districts do not have over their students. We disagree. As the Court noted in *Davis*, " '[t]he ability to control and influence behavior exists to an even greater extent in the classroom than in the workplace.' " *Id.* at 646, 119 S.Ct. 1661 (citation omitted). Indeed, " 'the nature of [the State's] power [over public schoolchildren] is custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults.' " *Id.* (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995)).

In asserting that Title IX's actual knowledge standard applies to claims against school districts for student-on-student sexual harassment rather than the "knew or should have known" standard used in co-worker sexual harassment claims, the School District is essentially seeking to hold aggrieved students to a more onerous standard than aggrieved employees under the MHRA. See *L.W.*, 915 A.2d at 549. Like the court in *L.W.*, we do not believe that students in the classroom are entitled to less protection from unlawful discrimination and sexual harassment than their adult counterparts in the workplace. *Id.* The standard for a public school district's liability for student-on-student sexual harassment under the MHRA should be the same as that for an employer's liability

for co-worker sexual harassment under the MHRA: the school district can be held liable if it knew or should have known of the harassment and failed to take prompt and effective remedial action.

### Allegations in Doe's Petition Sufficiently Stated a Claim

■ Applying the MHRA's standard for co-worker sexual harassment claims to the public school setting, we find that a school district may be held liable for student-on-student sexual harassment under Section 213.065.2 where the plaintiff alleges and proves: (1) he is a member of a protected group; (2) he was subjected to unwelcome sexual harassment; (3) his gender was a contributing factor in the harassment; (4) the harassment refused, withheld from, or denied, or attempted to refuse, withhold from, or deny him any of the accommodations, advantages, facilities, services, or privileges made available in the public school, or segregated or discriminated against him in the use thereof on grounds of race, color, religion, national origin, sex, ancestry, or disability; (5) the public school district knew or should have known of the harassment and failed to take prompt and effective remedial action.

The allegations in Doe's petition are sufficient to state a cause of action under this standard. In his petition, Doe alleged he was sexually harassed and sexually assaulted on multiple occasions by another male student in the boys' restroom and that this harassment occurred on the basis of his gender. Doe alleged that school administrators, as well as the teachers and paraprofessionals responsible for supervising him and the perpetrator, had knowledge of the perpetrator's inappropriate and sexualized behavior and his aggressive tendencies. Doe further alleged that, despite knowledge of the perpetrator's sexual tendencies, school personnel permitted the perpetrator to use the restroom at the

same time as other male students, which directly resulted in the perpetrator having the opportunity to sexually harass and sexually assault him. Doe contended that, as a result of the sexual harassment and sexual assaults, he has experienced emotional distress in the form of anxiety, fear, and depression, among other manifestations. Doe asserted that the School District's actions and inactions deprived him of the full, free, and equal use and enjoyment of the school and its services.

The School District argues these allegations are insufficient to state a cause of action because Doe did not allege that he was actually denied or refused access to the school. The plain language of Section 213.065, however, does not require that the victim of discrimination be denied *access* to the public accommodation. Rather, it requires only that the victim be denied "any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation" or that the victim be discriminated against in his use of the public accommodation on the grounds of race, color, religion, national origin, sex, ancestry, or disability. § 213.065.2. Doe's allegation that he was sexually harassed and sexually assaulted on multiple occasions in the boys' restroom sufficiently pled that he was discriminated against, i.e., subjected to "unfair treatment based on ... sex," Section 213.010(5), in his use of the school in that he was denied the full and equal use and enjoyment of the school and its services.

The School District further argues that Doe failed to state a cause of action because young elementary school children cannot engage in conduct constituting unlawful sexual harassment as a matter of law. To support this assertion, the School

District cites language from two Title IX cases, *Davis,* 526 U.S. at 651, 119 S.Ct. 1661, and *Gabrielle M. v. Park Forest– Chicago Heights, Il. Sch. Dist. 163,* 315 F.3d 817, 821 (7th Cir.2003). While both *Davis* and *Gabrielle M.* indicate that the ages of the children involved in a claim of student-on-student sexual harassment is a relevant consideration in determining whether there was actionable sexual harassment under Title IX, neither case holds that, as a matter of law, the conduct of young children *cannot* rise to the level of actionable harassment. See *Davis,* 526 U.S. at 651, 119 S.Ct. 1661, and *Gabrielle M.,* 315 F.3d at 821–22.

The School District also cites articles and studies concerning age-appropriate behavior for young children and argues that the conduct alleged in this case was "normal" for children who are the same age as the alleged perpetrator. The School District's argument is based on facts and evidence outside the petition. In his petition, Doe did not plead his age or the alleged perpetrator's age. In the hearing on the School District's motion to dismiss, the court told the parties it would not treat the motion as one for summary judgment and would not consider the children's ages. In its judgment, the court expressly stated it did not consider information outside the pleadings in dismissing Doe's petition. On appeal, we do not consider evidence outside the pleadings.[3] *Thomas v. A.G. Elec., Inc.,* 304 S.W.3d 179, 183 (Mo.App.2009). Likewise, we do not weigh the credibility or persuasiveness of the allegations or address the merits of the case. *Id.* While the children's ages and the age-appropriateness of the alleged conduct will certainly be relevant in determining whether Doe proved he was sub-

**3.** Because we cannot consider evidence outside the pleadings in reviewing the propriety of the dismissal, the School District's motion to strike documents from Doe's appendix that it alleges are outside the record is denied as moot.

jected to unwelcome sexual harassment, we do not rely on it given the procedural posture of this appeal.[4]

### CONCLUSION

■ Construing Doe's petition liberally and according it all reasonable inferences deducible from the facts stated, we find that Doe stated a cause of action under Section 213.065.2 for discrimination in a public accommodation based on student-on-student sexual harassment. Therefore, we reverse the circuit court's judgment dismissing the petition and remand the case to the circuit court for further proceedings consistent with this opinion.[5]

All Concur.

4. Because the children's ages are outside the pleadings, we also reject the School District's related argument that, in light of the children's ages, the balance of equities militates against allowing Doe's cause of action.

5. In its *amicus curiae* brief, the Association raises other bases for upholding the dismissal. The Association contends that the School District is not a "person" and, therefore, is not subject to Section 213.065. The Association also contends that Doe had other available remedies, such as an equal protection claim and a claim under 42 U.S.C. § 1983. Because the School District did not raise these arguments in its motion to dismiss, we cannot consider them as grounds for upholding the dismissal on appeal. See *Kixmiller v. Bd. of Curators of Lincoln Univ.*, 341 S.W.3d 711, 713 (Mo.App.2011).