

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI ex rel. L.O., as Next Friend and Biological Mother of L.D., | ) ) ) ) | |
| Relator, | ) ) | WD86712 |
| v. | ) ) ) | OPINION FILED: December 19, 2023 |
| THE HONORABLE W. ANN HANSBROUGH, CIRCUIT JUDGE, CIRCUIT COURT OF PLATTE COUNTY, MISSOURI, | ) ) ) ) ) | |
| Respondent. | ) | |

## ORIGINAL PROCEEDING IN PROHIBITION AND MANDAMUS

**Before Writ Division:** Lisa White Hardwick, Presiding Judge, and
Mark D. Pfeiffer and W. Douglas Thomson, Judges

The case before us stems from allegations that Relator, a minor African-American female student[1] at Platte County High School ("the High School"), was subject to race-based, student-on-student discrimination and, pursuant to the Missouri Human Rights Act

---

[1] The next friend and biological mother of the minor student is formally designated as the Relator in this proceeding. However, for purposes of this opinion, we refer to the minor student who is alleged to have been racially harassed as the Relator for ease of communication while still maintaining the confidentiality of the minor's name.

("MHRA"), has pursued a public accommodation claim against Platte County School District R-3 ("the District"). Because separate incidents of nooses being hung on the District's school premises that bracketed the targeted incident involving Relator—in which disturbing and offensive phrases such as "Configure your nigger" and "Install your nigger" were directed at Relator—are clearly relevant to Relator's burden of proving her accommodation claim against the District, Respondent's refusal to permit *discovery* on these noose incidents is such a clear abuse of discretion that we must order the extraordinary relief requested by Relator in this writ proceeding.

## Factual and Procedural History

On November 13, 2023, Relator filed a Petition for Writ of Prohibition or Mandamus with this Court seeking preliminary and permanent relief directing that certain rulings issued by The Honorable W. Ann Hansbrough ("Respondent"), a judge sitting in the Circuit Court of Platte County, Missouri ("trial court"), be vacated and that the trial court be directed to compel discovery on matters reasonably calculated to lead to the discovery of admissible evidence. Respondent's rulings in question relate to stricken allegations and denial of discovery.

On November 28, 2023, we issued a Preliminary Order of Prohibition and Mandamus ("Preliminary Order") denying Relator's writ relief as it related to Respondent's ruling on stricken allegations, granting preliminary relief on Relator's request as it related to Respondent's ruling on certain discovery requests seeking information about nooses hung in the High School, and ordering Respondent to file an Answer to Relator's Petition for Writ of Prohibition or Mandamus. Respondent has since

2

filed an Answer which we have considered in issuing today's ruling. The full relevant background and procedural history follows. We now make our Preliminary Order of Prohibition and Mandamus permanent with specific instructions as to discovery Respondent is directed to compel in the underlying litigation below.

## Background and Procedural History

### A. MCHR Charge

On January 10, 2020, Relator filed a Charge of Discrimination ("Charge") with the Missouri Commission on Human Rights ("MCHR") against the District. The Charge alleged Relator "and other African-American students have been subjected to ongoing severe and pervasive harassment and discrimination based on race." In the Charge, Relator checked boxes indicating discrimination based on race, color, and denial of public accommodation.

The Charge detailed three separate incidents of discrimination including allegations that (1) during the 2017-2018 school year, 10-15 nooses were found hanging in the boys' bathroom of the High School; (2) on or about November 7, 2019, a middle-school student accessed the District's server and shared a Google document with every student in the District espousing neo-Nazi propaganda, including "outrageous, hateful, inappropriate, and hurtful racial slurs and statements" under the headings "Configure your nigger," "Feed your nigger, "Entertain your nigger," "Install your nigger," and "Make your nigger work"; and (3) on or about December 4, 2019, another noose was discovered in the boys' bathroom of the High School.

The Charge also detailed the District's response, or lack thereof, to these incidents. Specifically, the Charge alleged that in response to the November 7, 2019 email incident ("racial email incident"), the District disabled access to the shared Google document and "reminded students as well as parents and staff about the District's technology usage." According to the Charge, "[n]o apology was issued at the time to any of the African-American students or their parents" and the middle-school student responsible received insignificant punishment. Following the racial email incident, Relator's mother contacted the High School and, when unable to speak with the principal, Relator's mother informed the assistant principal that Relator was having nightmares. In response, "no counseling or other help was offered until December 5, 2019." And even after December 5, 2019, the Charge alleged the District only provided listings of third-party services without providing any services through the High School or the District.

The final paragraphs of the Charge stated:

Through the above actions of its employees and/or agents and/or third parties, the High School and the District, directly or indirectly, refused, withheld, and/or denied [Relator], and/or attempted to refuse, withhold from or deny [Relator] the accommodations, advantages, facilities, services, and/or privileges made available in this place of public accommodation. Additionally, or alternatively, [Relator] was segregated and/or discriminated against in the use of this public accommodation on the grounds of race and/or color, in violation of the Missouri Human Rights Act.

As a result of the unlawful conduct of the High School and the District and/or their employees and /or agents and/or third parties, [Relator] suffers and will continue to suffer emotional distress.

4

The District submitted a position statement to the MCHR in answer to Relator's charge in which the District denied all of Relator's allegations of inaction and asserted that nooses found in the boys' bathroom "were not racially motivated."

**B. Right to Sue**

On January 12, 2021, the MCHR issued Relator a Notice of Right to Sue on the racial email incident, but denied Relator a right to sue on the incidents involving allegations of nooses being hung in the boys' bathroom ("noose incidents"). Per the MCHR decision, Relator was denied a right to sue on the earlier of the two noose incidents because the Charge "was not filed within 180 days of the alleged discrimination as required by the Missouri Human Rights Act." As for the December 4, 2019 noose incident, the MCHR concluded Relator lacked standing to sue for that incident.

**C. Petition and Motion to Strike**

Relator, by and through her mother, timely filed a Petition for Damages ("Petition") in the trial court. The Petition named the District as the sole defendant and asserted one count of public accommodation discrimination in violation of the MHRA. The Petition detailed the incidents of student-on-student discrimination outlined in the Charge—including the racial email incident directly targeting Relator as well as the noose incidents bookending the racial email incident. As relevant here, paragraphs 14, 15, and 24 of the Petition contained allegations about the noose incidents as follows:

> (14)     Even before [Relator] started at [High School], sometime during the school year of 2018-2019, between 10 and 15 nooses were found in the boys' bathroom at [High School;]

(15)     Upon information and belief, nothing was done to address these incidents; [and]

. . . .

(24)     On or about December 4, 2019, another noose was found in the boys' bathroom at [High School].  As a result of these incidents, and the general discriminatory environment at [High School], [Relator] did not feel safe at school and started experiencing nightmares and other emotional distress.

On June 7, 2021, the District filed a Motion to Strike the above-stated allegations. Relator opposed, and after briefing concluded, Respondent issued an order on March 18, 2022, granting District's Motion to Strike.  Respondent further ordered Relator to file an amended petition.  Relator complied by filing a First Amended Petition for Damages ("Amended Petition") on March 18, 2022, that contained no allegations relating to the noose incidents.

**D.  Interrogatories Regarding Noose Incidents (Nos. 1-3, 7-10, and 14)**

Following the filing of her Amended Petition, Relator served First Interrogatories ("Interrogatories") on the District on July 28, 2022.  Though allegations related to the noose incidents were eliminated in the Amended Petition, the Interrogatories sought information about the noose incidents, including the manner and date the District came to know about the noose incidents (Interrogatories 1 and 7); identification of persons involved in any investigation conducted by the District into the noose incidents and their role in the investigation (Interrogatories 2 and 8); and all witnesses interviewed by the District as part of any investigation regarding the noose incidents (Interrogatories 3 and 9).

Relator also posed Interrogatories requesting information about all persons who consulted or participated in disciplinary actions of students involved in the noose incidents *and* the racial email incident (Interrogatory 10), as well as "all complaints of race discrimination or harassment, whether verbal or in writing, received by Defendant with respect to the student perpetrators" involved in the noose incidents *and* the racial email incident (Interrogatory 14).

The District responded to Relator's Interrogatories on August 30, 2022. In so doing, the District asserted a summary objection to Interrogatories 1-3, 7-10, and 14. That summary objection stated:

> Interrogatories concerning noose incidents stricken by the Court on March 18, 2022. (Interrogatories 1, 2, 3, 7, 8, 9, 10, and 14)
>
> Objection – these interrogatories are not relevant. At issue is a single incident occurring "on or about November 7, 2019," as alleged in ¶¶'s 14-17 in Plaintiff's [Petition]. The above identified interrogatories seek information about alleged occurrences occurring on entirely separate dates and wholly unrelated to (1) the subject incident, (2) Plaintiff, and (3) the single count alleged in the Petition. As such, no information gathered by these interrogatories will lead to factual information relevant to a claim or defense for the parties.
>
> Objection – these interrogatories seek information about alleged occurrences specifically stricken by the Court in its March 18, 2022 Order.
>
> Objection – these interrogatories seek information about alleged occurrences for which the Missouri Commission on Human Rights ("MCHR") specifically found that (1) Plaintiff had no standing to pursue, (2) were untimely filed, and (3) it specifically denied issuing a Right to Sue concerning.
>
> Objection – these interrogatories seek personally identifiable information protected under the Family Education Rights and Privacy Act ("FERPA").

**E. RFPs Regarding Noose Incidents (Nos. 10-21, 36-47, 54-58, and 60)**

Relator also served her First Request for Production of Documents ("RFPs") on the District on July 28, 2022. The RFPs sought documentation relating to the noose incidents, including documents and evidence relating to any investigation of the noose incidents conducted by the District (RFPs 10, 36); copies of written statements supplied by witnesses relating to any investigation conducted by the District into the noose incidents (RFPs 11, 38); documents evidencing any action taken, or discipline imposed, by the District relating to the noose incidents (RFPs 12, 20, 39); correspondence, notes, recordings, and memoranda shared between the District's personnel related to the noose incidents (RFPs 13, 14, 41, 42); notes, recordings or memoranda between the District's personnel and student perpetrators involved in the noose incidents (RFPs 15, 43); correspondence between the District and Relator's mother relating to the December 4, 2019 noose incident (RFP 40); complaints received by the District from the District's students or their parents with respect to the noose incidents and documents referencing the same (RFPs 16, 37, 54, 55); documents memorializing the District's conclusions and credibility determinations resulting from any investigation conducted (RFPs 17, 44); documents referencing any reports by the District to law enforcement authorities and any ensuing reports prepared by law enforcement authorities (RFPs 18, 19, 45, 46).

Relator's RFPs also sought redacted (in consideration of FERPA issues) academic records of perpetrators found to be involved in the noose incidents as they relate to complaints and disciplinary actions imposed on said perpetrators during their enrollment in the District (RFPs 21, 47); redacted copies of documents or correspondence exchanged

with parents of alleged perpetrators "relating to behavioral issues and/or inappropriate conduct" (RFP 56); copies of any photographs or documentary evidence of the noose incidents (RFPs 57, 58); and any documents relied on by the District for its asserted position to the MCHR that the "noose incidents were not racially motivated" (RFP 60).

The District re-asserted the same summary objection in response to the RFPs relating to the noose incidents as it did in response to the Interrogatories relating to the noose incidents.

### F. Ongoing Discovery Issues

After additional efforts to informally resolve the discovery disputes with the District failed, Relator filed a motion to enforce discovery ("Discovery Motion") on April 6, 2023. The Discovery Motion sought an order from Respondent compelling the District to provide full and complete answers to interrogatories and responses to document productions relating to the noose incidents.[2]

The District filed suggestions in opposition to the Discovery Motion in which it argued discovery on the noose incidents was "wholly unrelated and not relevant" to Relator's public accommodation claim because (1) Relator's allegations relating to the noose incidents were stricken by Respondent; and (2) Relator did not witness either incident firsthand because she enrolled in the High School after the first noose incident and only learned of the second noose incident via social media.

---

[2] The Discovery Motion sought to compel additional discovery unrelated to the Interrogatories and RFPs seeking information of documentation related to the noose incidents, but we have limited our discussion to the Interrogatories and RFPs that relate to the noose incidents.

Along with the Discovery Motion, Relator also filed a Motion for Reconsideration asking Respondent to reconsider her March 18, 2022 ruling granting the District's Motion to Strike. After briefing concluded, Respondent heard oral arguments on Relator's Discovery Motion and Motion for Reconsideration. During those oral arguments, Respondent clarified her stance on discovery relating to the noose incidents:

> Okay. Well, let me just go ahead and—and tell you now, I find the noose is irrelevant. **<u>No information regarding the nooses is going to be disclosed.</u>** . . . And so, with regard to [Interrogatory] Number 14, if we are ruling on relevancy, I am going to rule that [Interrogatory] Number 14 need not be produced because anything regarding the nooses—and we'll go through each of these and make sure we're in—in compliance and in—consistent—does not have to be produced.

(Emphasis added.) Respondent further stated:

> Okay. Now, the next set that I see is sets 1, 2, 3, 7, 8, 9, and 10 with regard to information about the nooses in the boys' bathroom. And with regard to those, I—I do find that—based upon the determination by the Missouri Human Rights Commission and the distinctions that I see between this case and the cases that have been cited by the plaintiff—that that—those are all not relevant to this case and need—so Interrogatories Numbers 1, 2, 3, 7, 8, 9, and 10 need not be responded to.

As for the RFPs, Respondent explained:

> Request for productions, Numbers 10 through 21, 36 through 47, 54, 55, 57, 58, and 60. All seek documents related to—the two incidents with regard to the nooses; is that correct?
>
> . . . .
>
> If that is what's requested, again, I keep the same stance, that I think that those were excluded. I interpret the—the cases that have been cited by the plaintiff for that information to be disclosed differently. And I find there're [sic] distinctions between those cases and the case at bar. And since those were not a part of the Right to Sue letters, I'm going to direct that those requests for production of documents just referenced need not be produced.

On October 3, 2023, Respondent issued a ruling regarding the Discovery Motion. Respondent denied Relator's requests with respect to Interrogatories 1-3 and 7-10, and RFPs 10-21, 36-47, 54-58, and 60. Respondent granted Relator's request with respect to Interrogatory 14 "but only to the extent that these Interrogatories seek information about the [racial email incident]." Effectively, Respondent denied Relator *any* discovery on the noose incidents.

**G. Writ to Our Court**

Relator's Petition for Writ of Mandamus or Prohibition seeks relief from (1) Respondent's March 18, 2022 ruling striking allegations related to the noose incidents (¶¶ 14, 15, and 24 of Relator's Petition); and (2) Respondent's October 3, 2023 order denying Relator any discovery on the noose incidents followed.

As noted above, we issued a Preliminary Order on November 28, 2023 denying Relator writ relief on Respondent's March 18, 2022 ruling. However, we ordered that Respondent vacate her order dated October 3, 2023 denying Relator discovery on Interrogatories 1-3, 7-10, and 14 and RFPs 10-21, 36-47, 54-58, and 60, and take no further action concerning such discovery until further order of this Court. For reasons explained below, we now make the rulings contained in our Preliminary Order permanent and supply additional relief as further discussed herein.

## Analysis

Trial courts have broad discretion in administering rules of discovery and an appellate court will not disturb such discretion by the trial court absent an abuse of discretion. *State ex rel. Delmar Gardens N. Operating, LLC v. Gaertner*, 239 S.W.3d

11

608, 610 (Mo. banc 2007). "Mandamus is proper, however, when a court abuses its discretion in denying" discovery on matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence. *State ex rel. BNSF Ry. Co. v. Neill*, 356 S.W.3d 169, 172 (Mo. banc 2011). "It is not grounds for objection that the information [sought in discovery] may be inadmissible at trial, but it is sufficient if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *State ex rel. Plank v. Koehr*, 831 S.W.2d 926, 927 (Mo. banc 1992).

Respondent's refusal to permit discovery on the topic of separate incidents of nooses being hung on the District's school premises both before and after the subject incident of heinous racial slurs directed at Relator in the racial email incident is plainly an abuse of discretion.

This Court has previously provided guidance on public accommodation claims against school districts in which student-on-student harassment is the triggering event. *Doe by & through Subia v. Kansas City, Mo. Sch. Dist.*, 372 S.W.3d 43 (Mo. App. W.D. 2012). In *Subia*, the facts centered on sexual harassment instead of race-based harassment, but we described the elements for a MHRA public accommodation claim against the school district for harassment involving a protected class as: (1) the plaintiff is a member of a protected group (race, color, religion, national origin, sex, ancestry, or disability); (2) the plaintiff was subjected to unwelcome harassment; (3) the plaintiff's protected class [race] was a motivating factor in the harassment; (4) the harassment refused, withheld from, or denied, or attempted to refuse, withhold from, or deny the plaintiff of the accommodations, advantages, facilities, services, or privileges made

12

available in the public school, or segregated or discriminated against the plaintiff in the use thereof on the grounds of [race]; and (5) the public school district knew or should have known of the harassment and failed to take prompt and effective remedial action. *Id.* at 52-54.[3]

"Thus, a student . . . may prevail on a [MHRA accommodation] claim against a school district . . . if the student proves that [the school district], directly or indirectly, discriminated against him in his use of the public school system on the grounds of race." *M.N. by & through S.N. v. N. Kansas City Sch. Dist.*, 597 S.W.3d 786, 792 (Mo. App. W.D. 2020). And, "[c]ompensatory damages for violations of section 213.065 may be awarded for humiliation and emotional distress." *Id.* at 792 n.6 (citing *Mo. Comm'n on Hum. Rts. v. Red Dragon Rest., Inc.*, 991 S.W.2d 161, 171 (Mo. App. W.D. 1999)).

Importantly, as *Subia* declares, *school accommodation claims* based on harassment borrow from *employment hostile work environment case law*, to-wit:

> [T]he School District and the Association argue the "knew or should have known" standard makes sense only in the employment context due to the control employers assert over their employees—control they claim school districts do not have over their students. We disagree. As the Court noted in *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999), "the ability to control and influence behavior exists to an even greater extent in the classroom than in the workplace." *Id.* at 646 (citation omitted). Indeed, "the nature of [the State's] power [over public schoolchildren] is custodial and tutelary, permitting a degree of supervision and control that could not

---

[3] The reason this Court denied Relator's Petition seeking relief as to the Motion to Strike ruling is because Relator's Amended Petition sufficiently states a cause of action for a Missouri Human Rights Act ("MHRA") public accommodation claim against the District without the necessity of any of the allegations that were stricken by Respondent from Relator's original pleading.

be exercised over free adults." *Id.* (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655 (1995)).

*Subia*, 372 S.W.3d at 54. And, we further clarified:

> [W]e do not believe that students in the classroom are entitled to less protection from unlawful discrimination and sexual harassment than their adult counterparts in the workplace. *The standard for a public school district's liability for student-on-student sexual harassment under the MHRA should be the same as that for an employer's liability for co-worker sexual harassment under the MHRA*: the school district can be held liable if it knew or should have known of the harassment and failed to take prompt and effective remedial action.

*Id.* (emphasis added) (citation omitted). And, of equal importance, Missouri courts have also looked to federal discrimination case precedent for persuasive authority to the extent such precedent is consistent with Missouri law in the MHRA context. *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 115 (Mo. banc 2015).

Here, both before and very shortly after the racially motivated email incident targeting Relator (among others), a young African-American student attending public school in the District, in which *inter alia* hateful language about "configur[ing] your nigger" and "install[ing] your nigger" was directed at Relator, nooses were found hanging on school premises.

While it has been suggested by the District, without reference to any evidence whatsoever, that the noose incidents were not racially motivated or designed to show a "configuration" or "installation" that all too often became the demise for African-American victims of lynching in this country's history, many courts have affirmatively and conversely "found that even limited display of a noose can quickly precipitate a hostile work environment." *Smith v. Town of Hempstead Dep't of Sanitation Sanitary*

14

*Dist. No. 2*, 798 F.Supp. 2d 443, 452-53 (E.D.N.Y. 2011) (collecting federal hostile work environment cases). This is because "[t]he noose is a visceral symbol of deaths of thousands of African-Americans at the hand of lynch mobs." *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009) (citing *Williams v. N.Y. City Hous. Auth.*, 154 F. Supp. 2d 820, 824 (S.D.N.Y. 2001)); *Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1163 (10th Cir. 2008) ("The effect of such violence on the psyche of African-Americans cannot be exaggerated. Sociologists have explained that lynching was employed to maintain dominance [over African-Americans] ") (quoting *Williams*, 154 F. Supp. 2d at 824) (internal quotation marks omitted).

The point, here, is that we have no idea what the evidence is relating to the noose incidents on the District's school premises—whether those noose incidents were racially motivated or not—because *discovery* has not been permitted on the noose incidents— even where those noose incidents and the District's investigation, action, or inaction, may very well shed light on the topic of whether the District "knew or should have known" of a racially discriminatory environment at its schools and for its students—evidence which is directly relevant to Relator's burden of proving her accommodation claim against the District.[4]

_____

[4] In somewhat of a Freudian slip, the District has objected to any suggestion that the noose incidents are "background evidence" and has instead argued that the topic of the noose incidents bears upon the Relator's allegations "to establish the key elements of Relator's single claim under the MHRA . . . that the District knew or should have known about racial discrimination, and that it failed to take prompt and effective remedial action." Resp't Suggestions in Opp'n to Relator's Pet. For Writ, at 9. To state District's argument is to recognize why the evidence sought regarding the noose incidents bears *directly* on Relator's ability to attempt to meet her burden of proof in this subject MHRA

The District (and Respondent) also seize upon the procedural circumstance that the MCHR refused to grant a "right to sue" letter to Relator on the noose incidents that occurred both before and after the racial harassment directed at her via the racial email incident. The MCHR ruled that the "before" noose incidents were barred by the statute of limitations and the "after" noose incidents were barred by the doctrine of standing. However, there is absolutely nothing in the MCHR rulings in any way suggesting that evidence of the noose incidents was *irrelevant* to Relator's race-based accommodation claim against the District.

Further, "[q]uestions of law are not committed to the discretion of administrative agencies, nor dependent on their expertise, but are questions 'for the courts ultimately to resolve on judicial review when called upon to do so.'" *Sultany Trucking, LLC v. Mo. Clean Water Comm'n*, 662 S.W.3d 775, 782 (Mo. App. W.D. 2023) (internal quotation marks omitted) (quoting *Ferry v. Bd. of Educ. of Jefferson City Pub. Sch. Dist.*, 641 S.W.3d 203, 207 (Mo. banc 2022)). In other words, questions of law relating to legal relevance of discovery in a MHRA lawsuit are *not* for administrative agencies to resolve. Any attempt by the District or Respondent to convert the MCHR rulings relating to Relator's Charge into a legal basis for denying discovery in a Missouri courtroom is fraught with foundational error.

Likewise, Missouri courts have *never* held that plaintiffs who sue under the MHRA are limited only to presenting evidence of the events which the MCHR provided

---

claim and leads to the obvious conclusion that *discovery* on these noose incidents is "reasonably calculated to the discovery of admissible evidence."

a right-to-sue letter for, which is why the District and Respondent cite *no precedent* supporting their position to that effect. To the contrary, evidence of events determined to be unactionable for timeliness reasons may, for example, be relevant as background evidence for an actionable claim. *McKinney v. City of Kansas City*, 576 S.W.3d 194, 199 (Mo. App. W.D. 2019).

And, while *McKinney* may have involved background evidence of other incidents specifically targeting the same MHRA plaintiff, the Missouri Supreme Court has also directed that other incidents having no transactional connection to the plaintiff's actionable claim may nonetheless be relevant as "me too" evidence. *Cox*, 473 S.W.3d at 118-19.

In *Cox*, the plaintiff, who alleged his firing was motivated primarily by age discrimination, was not allowed to present the testimony of nearly twenty other employees who suspected they had been fired for their age at trial. *Id.* at 113-14, 124-25. The *Cox* court held the trial court abused its discretion in determining the "me-too" evidence to be *inadmissible at trial. Id.* at 111-12. Thus, although Mr. Cox would not have had "standing" to assert MHRA claims on behalf of the age discrimination claims possessed by these other employees, our Missouri Supreme Court concluded that evidence of these other firings—which had no transactional connection to Mr. Cox's claim—were *admissible*, because the Court found those firings to be "highly logically relevant" evidence tending to prove discriminatory intent against Cox in his firing. *Id.* at 125. *See also Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 794 (8th Cir. 2004) ("Evidence of widespread toleration of racial harassment and disparate treatment

condoned by management was relevant to its motive in firing [an African-American employee] Mr. Williams."); *Hall v. Gus Const. Co.*, 842 F.2d 1010, 1015 (8th Cir. 1988) ("[E]vidence of sexual harassment directed at employees other than the plaintiff is relevant to show a hostile work environment.") (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987) ("[O]ne of the critical inquiries in a hostile environment claim must be the *environment*.  Evidence of a general work atmosphere therefore—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim.").

Here, we are not even at the stage of evaluating the *admissibility* of any evidence relating to the circumstances and investigation regarding the noose incidents; instead, we are merely at the stage of *discovery*—the attempt to determine if any of the circumstances surrounding the noose incidents are relevant to the topic of proving discriminatory intent by the District.  Without question, the standard for *discovery* is lower than the standard for *admissibility*.  *Plank*, 831 S.W.2d at 927.

Relator's theory of the case is that the District has facilitated student-on-student racial harassment either by not properly responding to known past incidents of racial harassment or by failing to investigate these incidents altogether.  Thus, Relator alleges the District has created an expectation amongst its students that race-based harassment is not taken seriously, which resulted in Relator's episode of race-based harassment (*i.e.,* racial email incident) and also has exacerbated the emotional harm Relator experienced as a result of that racial harassment.  *See Carter v. Chrysler Corp.*, 173 F.3d 693, 701 n.7 (8th Cir. 1999) (citing *Schwapp v. Town of Avon*, 118 F.3d 106, 111-12 (2d Cir. 1997)

18

("Whether Schwapp was aware of [the incidents prior to his employment] during his employment, and, more significantly, whether in light of these incidents, the incidents Schwapp experienced more directly 'would be reasonably perceived, and [were] perceived, as hostile or abusive' are factual issues that should be resolved by a trier of fact.") (second alteration in original) (citation omitted)).

Without permitting discovery regarding the noose incidents, there is no way of knowing which students or student group perpetrated the noose incidents and whether there is any connection to the student or student group involved with the race-based harassment incident targeting Relator (a connection which, if proven, could lead to the discovery of admissible evidence relevant to the present accommodation claim). Likewise, there is no way of knowing how seriously the District treated the noose incidents without discovery into the investigation (or lack thereof) that was performed by the District and any remedial steps (or not) that were taken by the District. And, there is no way of knowing if the District's conclusion that the nooses have nothing to do with a symbol of lynching African-Americans is patently unreasonable and naïve because, once again, Respondent has not permitted discovery into what investigation, conclusions, and students were involved in the noose incidents. Finally, a student standing in Relator's shoes, who knows of what may very well be proven to be serious incidents of racially motivated harassment—the noose incidents—that go unpunished (if they did), is more likely to feel threatened when victimized in an unrelated incident of racially motivated harassment because of a lack of faith that her own incident will result in any real consequences for the offenders. Hence, the District's response to the noose incidents is

19

relevant to evaluate the reasonableness of this belief, and it is certainly relevant to evaluating Relator's claim that the District was permitting a racially discriminatory environment to exist at its schools.

John Adams was an American statesman, attorney, diplomat, writer, and one of the Founding Fathers of this country who served as the second President of the United States from 1797 to 1801. Of "facts," he once said:

> Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence.

While not all *facts* become admissible *evidence* in litigation settings, the process of a fair and reasonable search for admissible evidence is vital to the integrity of our country's system of justice, and it cannot be accomplished when the gatekeepers of facts and evidence—judges—refuse to permit access to those stubborn facts which may lead to the discovery of admissible evidence—even where the wishes, inclinations, or dictates of our passions are such that we would rather avoid uncomfortable facts altogether.

When we select juries in this country, lawyers and judges often wax poetic about the Latin phrase, *voir dire*, reminding the venire panel that it is their obligation to "speak the truth" about any biases that may prevent them from serving on a jury in a particular case. But, how can we expect such juries, once selected, to *decide* the truth unless we equip them with all of the relevant evidence necessary to make such important decisions to resolve disputes in our society?

All of this is to say that we recognize our relief provided today is extraordinary. However, absent such intervention at this early stage of litigation, there is a danger that

any subsequent trial of this matter will be tainted by a jury viewing the lens of evidence in a factually deficient vacuum. This we will not permit.

## Conclusion

Relator's discovery requests directed to the noose incidents that occurred before and after the racial email incident that targeted Relator (among other African-American students at the High School) are reasonably calculated to lead to the discovery of admissible evidence as to liability and damages relating to Relator's underlying race-based MHRA accommodation claim against the District. Respondent's ruling to the contrary is an abuse of discretion. Accordingly, we make permanent our preliminary order prohibiting Respondent from enforcing her discovery rulings relating to the noose incidents in the Discovery Motion and we make permanent our mandate to Respondent that discovery by Relator sought in the Discovery Motion be compelled by sustaining the Discovery Motion (subject to any reasonable FERPA protections deemed legally necessary by Respondent) as to the noose incidents documented by Interrogatories numbered 1-3, 7-10, and 14 and Requests for Production of Documents numbered 10-21, 36-47, 54-58, and 60. In all other ways, Respondent is directed to permit future discovery (including, for example, depositions of individuals identified by the written discovery requests) consistent with today's ruling.

Mark D. Pfeiffer, Judge

Lisa White Hardwick, Presiding Judge, and W. Douglas Thomson, Judge, concur.

21