

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE ex rel. BLUE SPRINGS SCHOOL DISTRICT, | ) | |
| | ) | WD81197 |
| Relator, | ) | |
| | ) | OPINION FILED: May 21, 2019 |
| v. | ) | |
| | ) | |
| THE HONORABLE JACK R. GRATE, | ) | |
| | ) | |
| Respondent. | ) | |

## ORIGINAL PROCEEDING IN PROHIBITION

Before Writ Division: Cynthia L. Martin, Presiding Judge, Karen King Mitchell, Judge and Anthony Rex Gabbert, Judge

The Blue Springs School District ("School District") sought a writ of prohibition directing the circuit court ("Respondent") to take no action other than to grant the School District's motion for summary judgment. We issued a preliminary writ of prohibition. Thereafter, we quashed our preliminary writ on the issue of whether sovereign immunity has been abrogated for discrimination in public accommodation pursuant to section

213.065.[1]  We made our preliminary writ of prohibition permanent as to the common law claims asserted in this case because the School District did not waive sovereign immunity for common law torts by acquiring liability insurance.

The Supreme Court accepted transfer of the case, and then retransferred the case for reconsideration in light of *R.M.A.(a Minor Child) by his Next Friend, Rachelle Appleberry v. Blue Springs R-IV School District and Blue Springs School District Board of Education*, 568 S.W.3d 420 (Mo. banc 2019).

We again hold that our preliminary writ of prohibition is quashed with respect to the claim for discrimination in public accommodation asserted against the School District pursuant to section 213.065, though for different reasons than originally relied on by this court.  We also again hold that our preliminary writ of prohibition should be made permanent with respect to the common law claims asserted against the School District, as *R.M.A.* has no bearing on that holding.

### Factual and Procedural Background

On November 24, 2015, plaintiff ("B.Z.") initiated a lawsuit in the Circuit Court of Jackson County ("Underlying Lawsuit")[2] against the School District and three individuals employed by the School District ("Individual Defendants").[3]  B.Z. alleged that while she was a kindergartner, she was sexually harassed and assaulted by other students at her

---

[1]All statutory references are to RSMo 2000, as supplemented through November 24, 2015, the date the Underlying Lawsuit was filed, unless otherwise specified.

[2]The Underlying Lawsuit is styled *Jane Doe BZ b/n/f Jane Doe BA v. Blue Springs School District, et al.*, Docket Number 1516-CV25324, pending in the Circuit Court of Jackson County, Missouri.

[3]The Individual Defendants are a teacher, an assistant principal, and the principal of the elementary school attended by B.Z.  The Individual Defendants are not parties to this writ proceeding.

elementary school. Count I of B.Z.'s petition alleged discrimination in public accommodation pursuant to section 213.065 of the Missouri Human Rights Act ("MHRA").[4] Count II of the petition alleged the tort of negligent supervision/breach of ministerial duties. Count III of the petition alleged the tort of breach of fiduciary duty/confidential relationship. All three Counts named the School District and the Individual Defendants as defendants.

B.Z.'s petition alleged that "Defendants have purchased liability insurance covering the type of claims made herein."[5] The School District's answer alleged that the petition failed to state a claim for public accommodation discrimination, and that the School District had not waived sovereign immunity by acquiring insurance.[6]

The School District filed a motion for summary judgment. The School District alleged that Count I of B.Z.'s petition failed to state a claim because political subdivisions are not "persons" who can be liable for public accommodation discrimination pursuant to section 213.065. The School District's motion also alleged that its sovereign immunity for the common law torts alleged in Counts II and III of the petition was not waived by the acquisition of liability insurance.[7] Though it is uncontroverted that the School District was

---

[4]Section 213.010 *et seq.*

[5]As we discuss in greater detail, *infra*, the School District is a governmental entity entitled to sovereign immunity except to the extent waived. However, "'[s]overeign immunity is not an affirmative defense, but is part of the plaintiff's *prima facie* case.'" *Newsome v. Kansas City, Mo. Sch. Dist.*, 520 S.W.3d 769, 776 (Mo. banc 2017) (quoting *St. John's Clinic, Inc. v. Pulaski Cnty. Ambulance Dist.*, 422 S.W.3d 469, 471 (Mo. App. S.D. 2014)). As such, B.Z. had the burden to prove that the School District waived its sovereign immunity, and B.Z. was required to allege specific facts in her petition to establish waiver. *Id.* at 775-76; *Richardson v. City of St. Louis*, 293 S.W.3d 133, 137 (Mo. App. E.D. 2009). The purchase of liability insurance may function as a waiver of sovereign immunity. Section 537.610.1.

[6]The Individual Defendants also answered the petition, and asserted immunity pursuant to the public duty doctrine and official immunity. The Individual Defendants' immunity claims are not at issue in this writ proceeding.

[7]The School District's acquisition of liability insurance is irrelevant to determining whether Count I of B.Z.'s petition states a claim against the School District. The School District's potential liability pursuant to section

3

insured by Missouri Public Entity Risk Management Fund ("MOPERM") when the acts and omissions giving rise to B.Z.'s petition are alleged to have occurred,[8] the parties dispute whether that policy afforded the School District coverage for the claims alleged against it in Counts II and III of the petition.

Respondent denied the School District's motion for summary judgment on October 12, 2017.[9] On November 1, 2017, the School District filed a petition for writ of prohibition alleging that section 213.065 of the MHRA does not authorize a cause of action for discrimination in public accommodation against political subdivisions of the state, and that sovereign immunity was not waived for the common law tort claims alleged in Counts II and III of the petition by the acquisition of insurance. After requesting suggestions from the Respondent, this court issued a preliminary writ of prohibition directing that Respondent take no further action as to the School District in the Underlying Lawsuit.[10] We later quashed the preliminary writ of prohibition with respect to the claim against the School District pursuant to section 213.065, but made permanent the writ of prohibition with respect to the common law claims asserted against School District. The Supreme

213.065 turns on whether sovereign immunity for a claim of discrimination in public accommodation has been expressly waived by statute.

[8]One MOPERM policy was in place from July 1, 2013, to January 1, 2014, and a second policy was in place from January 1, 2014, to January 1, 2015. Though the policies are not identical, the variations between them are minor, and are immaterial to determining whether the policies afforded coverage to the School District for the claims alleged in Counts II and III of B.Z.'s petition. The policies are thus collectively referred to in this opinion as "policy."

[9]Respondent granted partial summary judgment for the Individual Defendants on Count I of the petition as the Individual Defendants were not been named in B.Z.'s complaint filed with the Missouri Commission on Human Rights ("MCHR"). As a result of the Respondent's summary judgment rulings, the School District is the sole remaining defendant under Count I of the petition, and the School District and the Individual Defendants remain defendants under Counts II and III of the petition.

[10]The order issuing a preliminary writ of prohibition also ordered a stay of the Underlying Lawsuit until further order of this Court.

4

Court accepted transfer of the case, then retransferred the case for reconsideration in light of *R.M.A.* Our previous opinion issued on May 1, 2018 is withdrawn.

## Standard Applicable to Writs of Prohibition

"This [c]ourt has discretion to issue and determine original remedial writs." *State ex rel. Bayer Corp. v. Moriarty*, 536 S.W.3d 227, 230 (Mo. banc 2017). "'The extraordinary remedy of a writ of prohibition is available: (1) to prevent the usurpation of judicial power when the trial court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted.'" *Id.* (quoting *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 45 (Mo. banc 2017)). "'Prohibition is particularly appropriate when the trial court, in a case where the [pertinent] facts are uncontested, wrongly decides a matter of law thereby depriving a party of an absolute defense.'" *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell*, 91 S.W.3d 612, 616 (Mo. banc 2002) (quoting *State ex rel. City of Marston v. Mann*, 921 S.W.2d 100, 102 (Mo. App. S.D. 1996)).

"Normally, we are reluctant to utilize the writ [of prohibition] for the purposes of reviewing a denial of summary judgment or to correct trial court error." *State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 500 (Mo. App. E.D. 1985). However, "[p]rohibition is generally the appropriate remedy to forestall unwarranted and useless litigation." *Id.* (citing *State ex rel. New Liberty Hosp. Dist. v. Pratt*, 687 S.W.2d 184, 187 (Mo. banc 1985)). "Forcing upon a defendant the expense and burdens of trial when the claim is clearly barred is unjust and should be prevented." *State ex rel. Howenstine v. Roper*, 155

5

S.W.3d 747, 749 (Mo. banc 2005) (citing *O'Blennis*, 691 S.W.2d at 500), *abrogated on unrelated grounds by Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. banc 2008). Because there is no right of appeal from the denial of a motion for summary judgment, the refusal to utilize a writ where the issues before the court are solely matters of law would compel a defendant to defend "unwarranted and useless litigation at great expense and burden." *O'Blennis*, 691 S.W.2d at 500; *see also State ex rel. New Liberty Hosp. Dist.*, 687 S.W.2d at 187 (holding that where "appeal fails to afford adequate relief, prohibition is the appropriate remedy to forbear patently unwarranted and expensive litigation, inconvenience and waste of time and talent"). Thus, prohibition is an appropriate remedy when "a defendant is clearly entitled to immunity." *State ex rel. Bd. of Trs. of City of North Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 355 (Mo. banc 1992). And prohibition is an appropriate remedy where a petition fails to state a viable theory of recovery, entitling the relator to be dismissed. *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 330 (Mo. banc 2009); *State ex rel. Union Elec. Co. v. Dolan*, 256 S.W.3d 77, 81-82 (Mo. banc 2008). However, "[a] writ of prohibition does not issue as a matter of right. Whether a writ should issue in a particular case is a question left to the sound discretion of the court to which application has been made." *Derfelt v. Yocom*, 692 S.W.2d 300, 301 (Mo. banc 1985) (internal citation omitted).

## Analysis

This writ proceeding requires us to resolve two issues: (i) whether the School District, a political subdivision, is a "person" subject to liability for public accommodation discrimination pursuant to section 213.065; and (ii) whether the School District's

6

MOPERM policy waived sovereign immunity for the common law torts alleged in Counts II and III of B.Z.'s petition by affording the School District coverage. The first issue is controlled by the Supreme Court's recent decision in *R.M.A*., 568 S.W.3d 420, 429-30 (Mo. banc 2019). The second issue requires us to construe an insurance policy, a question of law. *Seeck v. Geico General Ins. Co*., 212 S.W.3d 129, 132 (Mo. banc 2007). We review questions of law *de novo*. *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 808 (Mo. banc 2017).

I.

***Whether the School District is subject to liability for discrimination in public accommodation pursuant to section 213.065***

Count I of B.Z.'s petition alleges discrimination pursuant to the MHRA, and specifically, discrimination in public accommodation pursuant to section 213.065. B.Z. alleges that the School District[11] directly or indirectly discriminated against her use of a public elementary school[12] on the grounds of sex.

Section 213.065.2 describes the statutory claim for discrimination in public accommodation:

> It is an unlawful discriminatory practice ***for any person***, directly or indirectly, to refuse, withhold from or deny any other person, or to attempt to refuse, withhold from or deny any other person, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation, as defined in section

---

[11]As previously explained, Count I of the petition also named the Individual Defendants. However, the Individual Defendants were granted summary judgment on Count I of the petition because they were not named in the administrative complaint B.Z. filed with the MCHR. As a result, the School District is the only remaining defendant under Count I.

[12]Missouri courts have concluded that a public school is a place of public accommodation as defined in section 213.010(15). *Doe ex rel. Subia v. Kansas City, Mo. Sch. Dist*., 372 S.W.3d 43, 48-50 (Mo. App. W.D. 2012).

7

213.010 and this section, or to segregate or discriminate against any such person in the use thereof on the grounds of race, color, religion, national origin, sex, ancestry, or disability.

(Emphasis added.) Section 213.065.2 limits those who can be liable for discrimination in public accommodation to "any person." Under the MHRA, the term "person" is statutorily defined as follows:

[I]ncludes one or more individuals, corporations, partnerships, associations, organizations, labor organizations, legal representatives, mutual companies, joint stock companies, trusts, trustees, trustees in bankruptcy, receivers, fiduciaries, or other organized groups of persons.

Section 213.010(14).

The School District alleges that it is a political subdivision, and that political subdivisions are not included in the statutory definition of "person." As such, the School District alleges it is not a "person" subject to liability for discrimination in public accommodation pursuant to section 213.065.2. This issue of statutory construction was resolved in *R.M.A.*, 568 S.W.3d at 429-30, where our Supreme Court concluded that school districts and school boards "are 'persons' as defined by section 213.010(14) and used in section 213.065."

The preliminary writ of prohibition we issued directing that Respondent take no further action as to the School District in the Underlying Lawsuit is quashed with respect to Count I of B.Z.'s petition.

8

***Whether the School District's MOPERM policy waives sovereign immunity by affording coverage for the School District for the common law tort claims alleged in Counts II and III of the plaintiff's petition***

The School District argues that it enjoys sovereign immunity for the common law torts alleged in Counts II and III of B.Z.'s petition. Respondent argues that the School District's sovereign immunity for common law torts was waived by the acquisition of liability insurance.

Section 537.600.1 codifies sovereign immunity for tort liability as existed at common law, except to the extent waived, abrogated or modified by statutes in effect prior to September 12, 1977,[13] and except for injuries resulting from a public employees' operation of a motor vehicle in the course of their employment, or injuries caused by the condition of a public entity's property. Section 537.600.1(1), (2). These statutory exceptions to sovereign immunity are not at issue in this case.

Section 537.610.1 also addresses waiver of sovereign immunity and provides, in relevant part:

> [T]he governing body of ***each political subdivision*** of this state, notwithstanding any other provision of law, ***may purchase liability insurance for tort claims, made against . . . the political subdivision***, but the maximum amount of such coverage shall not exceed two million dollars for all claims arising out of a single occurrence and shall not exceed three hundred thousand dollars for any one person in a single accident or occurrence, . . . and no amount in excess of the above limits shall be awarded or settled upon. ***Sovereign immunity . . . is waived only to the maximum***

---

[13] *Jones v. State Highway Comm'n*, was decided on September 12, 1977, and abrogated sovereign immunity for tort liability. 557 S.W.2d at 230 n.15. Section 537.600 abrogated that decision.

***amount of and only for the purposes covered by such policy of insurance*** purchased pursuant to the provisions of this section . . . .

(Emphasis added.) By its plain terms, section 537.610.1 provides for the waiver of sovereign immunity if a political subdivision purchases liability insurance for tort claims made against the political subdivision. "[W]hen a public entity purchases liability insurance, [section] 537.610.1 provides that immunity is waived as to torts other than those set out in [section] 537.600 to the extent of and for the specific purposes covered by the insurance purchased." *Brennan By & Through Brennan v. Curators of the Univ. of Mo.*, 942 S.W.2d 432, 434 (Mo. App. W.D. 1997).

"The plaintiff shoulders the burden of proving the existence of an insurance policy, and that the terms of the policy cover the claims asserted by the plaintiff against the [political subdivision]." *Topps v. City of Country Club Hills*, 272 S.W.3d 409, 415 (Mo. App. E.D. 2008). Here, it is uncontroverted that the School District purchased a MOPERM policy. The parties dispute, however, the extent to which the policy provides coverage "for tort claims, made against . . . the [School District]." Section 537.610.1. Whether the School District's MOPERM policy waives sovereign immunity "is expressly dictated, and limited, by the terms of the insurance policy." *Topps*, 272 S.W.3d at 415. In making this determination, "we are guided by the policy language alone." *Id*.

Section I of the MOPERM policy is entitled "WHAT MOPERM PAYS." Section I, subparagraph A is entitled "COVERAGE." Coverage is afforded to the School District for claims made against the School District by two provisions: subparagraph A.1 and subparagraph A.2.

10

Subparagraph A.1 provides, in part:

Coverage for the Member Agency[14] for claims on causes of action established by Missouri Law. For claims of causes of action established by Missouri Law, MOPERM will pay on behalf of the Member Agency the ultimate net loss the Member Agency shall become legally obligated to pay by reason of liability arising out of:

a. Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motorized vehicles within the course of their employment;

b. Injuries caused by the condition of a public entity's property . . . .

Section I, subparagraph A.1 of the policy thus provides the School District "with coverage [for claims against it] for the two express exceptions to [section] 537.600, negligent operation of motor vehicles and injuries caused by the condition of a public entity's property." *Moses v. County of Jefferson*, 910 S.W.2d 735, 736 (Mo. App. E.D. 1995). As these statutory exceptions to sovereign immunity are not at issue in this case, Section I, subparagraph A.1 of the MOPERM policy is not relevant to the Respondent's contention that the School District waived sovereign immunity by acquiring insurance.

Section I, subparagraph A.2 provides:

***Coverage for Member Agency for claims on causes of action other than those established by Missouri Law***; and coverage for public officials and employees. ***For claims against the Member Agency on causes of action other than those established by Missouri Law*** and for claims against public officials and employees, ***MOPERM will pay the ultimate net loss which the***

---

[14]The School District is identified as the "Member Agency" on the policy's Declaration Page.

***Covered Party shall become legally obligated to pay*** by reason of liability for damages because of:

COVERAGE A - BODILY INJURY LIABILITY
COVERAGE B - PROPERTY DAMAGE LIABILITY
COVERAGE C - PUBLIC OFFICIALS ERRORS AND OMISSIONS LIABILITY
COVERAGE D - PERSONAL INJURY LIABILITY

to which this memorandum applies, caused by or arising out of an occurrence.

(Emphasis added.) The bold and italicized text in Section I, subparagraph A.2 provides coverage for the School District for "claims on causes of action other than those established by Missouri Law," and as to this narrow category of covered claims, agrees to pay losses the School District is legally obligated to pay. "[C]laims on causes of action other than those established by Missouri Law" has a settled meaning, and "provide[s] protection . . . against claims under federal statutes, as in *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), or for claims against the [School District] for injuries occurring in another state pursuant to *California v. Nevada*, 447 U.S. 125, 100 S.Ct. 2064, 65 L.Ed.2d 1 (1980)." *Moses*, 910 S.W.2d at 736. Counts II and III of B.Z.'s petition are not claims on causes of action "other than those established by Missouri law." Consistent with this fact, Respondent does not rely on the bold and italicized text in Section I, subparagraph A.2 to contend that the School District waived sovereign immunity by acquiring insurance.

Instead, Respondent relies solely on the underlined text in Section I, subparagraph A.2 to argue that the School District acquired insurance which waived sovereign immunity. The underlined text in Section I, subparagraph A.2 provides coverage "for public officials

12

and employees."  Unlike the coverage afforded the School District by subparagraph A.2, the coverage afforded to public officials and employees by subparagraph A.2 is *not* limited to particular claims.  Rather, subparagraph A.2 "provides coverage 'for public officials and employees on all claims,'" *Moses*, 910 S.W.2d at 737, and with respect to "all claims" against public officials and employees, the policy obligates MOPERM to pay for damages within Coverages A through D.[15]  Respondent reasons that the coverage for public officials and employees for "all claims" constitutes the acquisition of coverage by the School District for "all claims" because the School District is liable for the negligent acts and omissions of its employees pursuant to the doctrine of *respondeat superior*.

Respondent's argument is without merit.  The argument disregards that "[r]espondeat superior is not a cause of action but rather a theory under which an employer is held responsible for the misconduct of a [sic] employee where that employee is acting within the course of scope of his employment."  *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 89 n.6 (Mo. App. E.D. 2012).  Because political subdivisions act through their employees, recovery against a political subdivision in tort is almost universally pursuant to the doctrine of *respondeat superior*.  *See Southers*, 263 S.W.3d at 609 (concluding the same for actions to recover damages pursuant to the motor vehicle sovereign immunity waiver found in section 537.600.1(1)).  By its very essence, therefore, sovereign immunity protects the state and its political subdivisions from liability, including *respondeat superior*

---

[15]Damages sought in Count II and III of B.Z.'s petition fall within Coverage C for Public Officials Errors and Omissions (defined by the policy to include "any and all breaches of duty . . . arising from negligent action or inaction, mistake, misstatement, error, neglect, inadvertence or omission . . . in the discharge of duties with the Member Agency"), and Coverage D for Personal Injury Liability (defined by the policy to include "discrimination prohibited by law").

13

liability, *unless* sovereign immunity for the political subdivision is expressly waived. The MOPERM policy's express extension of coverage to public officials and employees for their *personal* liability does not constitute an express extension of coverage for the School District's *respondeat superior* liability. "It is often possible to sue a public official or an employee on a claim against which the public agency is protected by sovereign immunity, and one can well understand why [a political subdivision] might want to protect its functionaries against individual liability." *Moses*, 910 S.W.2d at 737. However, "[t]his provision [in a policy] does not [operate to] waive the [political subdivision's sovereign] immunity. *Id.*

Thus, the MOPERM policy does not provide the School District with coverage for *respondeat superior* liability as to all common law tort claims merely because it provides coverage to public officials and employees for such claims. As such, the School District has not waived sovereign immunity for the common law torts asserted in Counts II and III of B.Z.'s petition. Were we to conclude to the contrary, then the provisions in Section I, subparagraphs A.1 and A.2 expressly limiting the coverage afforded the School District would be rendered superfluous. "[W]e aim to give a reasonable meaning to every provision [of an insurance policy] and to avoid an interpretation that renders some provisions trivial or superfluous." *Nooter Corp. v. Allianz Underwriters Ins. Co.*, 536 S.W.3d 251, 264 (Mo. App. E.D. 2017).

Consistent with our conclusion, the MOPERM policy explicitly disclaims coverage for the School District beyond that expressly provided by the policy. "'Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring

14

agreement as well as the exclusions and definitions.'" *Owners Ins. Co. v. Craig*, 514

S.W.3d 614, 617 (Mo. banc 2017) (quoting *Dutton v. Am. Family Mut. Ins. Co.*, 454

S.W.3d 319, 323-24 (Mo. banc 2015)).  The MOPERM policy disclaimer states:

> Nothing contained in this section, or the balance of this document, shall be construed to broaden the liability of the [School District] beyond the provisions of Sections 537.600 to 537.610, RSMo, nor to abolish or waive any defense at law which might otherwise be available to the [School District] or its officers and employees.

A nearly identical disclaimer provision was at issue in *Topps v. City of Country Club Hills*,

where it was held that:

> Because a number of courts have held that "a public entity retains its full sovereign immunity when the insurance policy contains a disclaimer stating that the entity's procurement of the policy was not meant to constitute a waiver of sovereign immunity," the disclaimer provision in the City's [insurance] policy acts to retain the City's sovereign immunity.

272 S.W.3d at 418 (quoting *Parish v. Novus Equities Co.*, 231 S.W.3d 236, 246 (Mo. App.

E.D. 2007)).  The *Topps* court added that the disclaimer's references to sections 537.600

and 537.610 clearly indicated an intent to disclaim any waiver of sovereign immunity.  *Id.*

The disclaimer provision in the MOPERM policy reinforces that coverage is

afforded to the School District, but only for claims made against the School District

(including on a theory of *respondeat superior* liability):  (1) for causes of action arising out

of Missouri law, limited to injuries directly resulting from the negligent operation of motor

vehicles and injuries caused by a dangerous property condition (Section I, subparagraph

A.1); and (2) for causes of action not arising out of Missouri law, construed as claims

arising under federal law, or from injuries occurring in another state (Section I,

subparagraph A.2).  The MOPERM policy does not afford the School District coverage for

*respondeat superior* liability for any other claims. As plainly stated in section 537.610.1, sovereign immunity is waived by the acquisition of liability insurance "only for the purposes covered by such policy of insurance." The School District's sovereign immunity for the common law tort claims alleged in Counts II and III of B.Z.'s petition was not waived by the acquisition of liability insurance pursuant to section 537.610.1.

## Conclusion

The preliminary writ of prohibition we issued directing that Respondent take no further action as to the School District in the Underlying Lawsuit is quashed with respect to Count I of B.Z.'s petition. The preliminary writ of prohibition we issued directing that Respondent take no further action as to the School District in the Underlying Lawsuit is made permanent with respect to Counts II and III of B.Z.'s petition.

This matter is remanded to the trial court with instructions to enter summary judgment in favor of the School District in the Underlying Lawsuit on Counts II and III of B.Z.'s petition. In all other respects, this Court's general stay of proceedings in the Underlying Lawsuit is lifted.

_____
Cynthia L. Martin, Judge

All concur

16