

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| M.N., A MINOR, BY AND THROUGH HIS BIOLOGICAL MOTHER AND NEXT FRIEND, S.N., | ) ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | WD82959 |
| NORTH KANSAS CITY SCHOOL DISTRICT, and KELLY SERVICES, INC., | ) ) ) ) | Opinion filed: March 10, 2020 |
| Respondents. | ) ) | |

**APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI**
**THE HONORABLE DAVID P. CHAMBERLAIN, JUDGE**

Division Four: Karen King Mitchell, Chief Judge,
Cynthia L. Martin, Judge and Edward R. Ardini, Jr., Judge

M.N., by and through his biological mother and next friend, S.N., appeals the judgment of

the Circuit Court of Clay County granting summary judgment in favor of defendants North Kansas

City School District and Kelly Services, Inc. on M.N.'s claim of racial discrimination in his use of

a public accommodation under the Missouri Human Rights Act ("MHRA"). M.N. claims that he

was discriminated against in his use of a public accommodation in violation of section 213.065,

RSMo, when a substitute teacher employed by Kelly Services, Inc. and assigned to his classroom

in the North Kansas City School District called him a racially derogatory name on multiple

occasions. The school district and Kelly Services filed a joint motion for summary judgment, in

which they asserted, *inter alia*, that they could not be held liable for the conduct of the substitute teacher. The trial court granted the motion, finding there was no evidence that either defendant "knew or should have known that the substitute teacher would call [M.N.] the derogatory name." Because the trial court applied the incorrect standard in determining the defendants' liability for the substitute teacher's conduct, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

## Factual and Procedural Background[1]

In the fall of 2015, Debi Davis ("Davis") was a substitute teacher and employee of Kelly Services, Inc. ("Kelly Services"). During that time period, M.N. was in the fifth grade and attended West Englewood Elementary School in the North Kansas City School District ("District"). On Friday, October 9, 2015, Davis was assigned by Kelly Services to be a substitute teacher for M.N.'s classroom. M.N. had never met or seen Davis prior to that date. That afternoon, while passing out crossword puzzles to the students, Davis called M.N. and another African-American student seated at the table with him a "nigger." Later in the day, when M.N. was getting a pencil or ruler, Davis told him to "put it down because nigers [sic] are dumb." At the end of the school day, Davis told M.N. that she did not "give a shit" about him.

That afternoon M.N.'s mother ("Mother") learned of Davis's comments from a mother of one of M.N.'s classmates. Mother contacted the school principal and was advised that the principal had received calls about Davis's conduct and the school's liaison officer would be conducting an investigation. On October 12, 2015, the school principal notified Kelly Services that she had received reports from parents that Davis had used inappropriate language. On October 16, 2015,

---

[1] The facts, and the reasonable inferences that can be drawn therefrom, are set forth in the light most favorable to M.N., as he was the party against whom summary judgment was entered. *See ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

the school principal informed Mother that the investigation was still being conducted and that Davis would not be allowed to return to M.N.'s school.

Kelly Services also conducted an investigation into the events of October 9th. Davis denied to Kelly Services using any racial slurs or curse words. Kelly Services counseled Davis on appropriate and professional language and classroom management. Kelly Services did not terminate Davis at that time, but its incident report noted that Davis would be excluded from any further assignments in the District.

Davis remained employed by Kelly Services until March 7, 2016. Davis was terminated from her employment with Kelly Services because she had not accepted a substitute teaching assignment from Kelly Services in 150 days and had hung up on a Kelly Services employee who called to offer her a substitute teaching assignment.

M.N. filed charges of discrimination with the Missouri Commission on Human Rights ("Commission") in October 2015, alleging the District and Kelly Services (collectively, "Defendants") discriminated against him in his use of a public accommodation based on his race. In July 2016, the Commission issued M.N. notices of his right to sue.

On October 12, 2016, M.N. filed a petition in the trial court asserting one count of "Discrimination in a Place of Public Accommodation (R.S.Mo. § 213.065)" against both Defendants. Specifically, he alleged that Davis "was assigned by Kelly Services, Inc. and Defendant District to be a substitute teacher in the classroom in which [M.N.] was a student"; Davis "used disrespectful language, profanity, and racial slurs toward 5th grade students of Defendant District," including referring to M.N. "as a 'negro' or 'nigger' multiple times"; "Defendants treated [M.N.] unfairly in his use of West Englewood Elementary School"; and M.N.'s "race was a contributing factor in the unfair treatment he suffered from Defendants during

3

his use of West Englewood Elementary School." M.N. also alleged that "[a]t all times relevant to the allegations in this Petition, Debi Davis was an employee, servant or agent of Kelly Services, Inc. and/or North Kansas City School District and was acting in the course and scope of her employment or agency, making Kelly Services, Inc. and the District liable for her conduct."

Defendants filed a joint motion for summary judgment and suggestions in support, in which they asserted that "two racial slurs cannot constitute the denial of a public accommodation"[2] and that Defendants could not be held liable for the conduct of Davis. Regarding the latter argument, Defendants asserted that they did not know—nor should they have known—that Davis would make the derogatory comments, and therefore they could not be held liable for her conduct. They also asserted that they could not be held liable on a theory of *respondeat superior*, as Davis was not an employee of the District[3] and she was not acting within the scope of her employment or agency when she made the comments.

The trial court sustained Defendants' motion for summary judgment, finding that "[w]hile there [were] some disputes as to potential remedial steps that were or were not taken after the events given [sic] rise to the cause of action, the facts surrounding the cause of action are not disputed." The trial court found that the "true dispute surrounds the burden," and that "the appropriate burden, consistent with *[Subia ex rel.] Doe v. Kansas City*, 372 S.W.3d 43 (Mo. Ct. App. 2012), is that the Plaintiff must show that the School District, and in this case Kelly Services, either knew or should have known, the substitute teacher would call the student the offensive name that she did." The trial court found there was "no evidence either Defendant either knew or should

---

[2] We note that M.N. pleaded he was treated unfairly—*i.e.*, he suffered discrimination—in his use of a public accommodation, not that he was denied a public accommodation.

[3] Defendants concede that Davis was an employee of Kelly Services.

have known that the substitute teacher would call the student the derogatory name," and thus entered judgment in favor of Defendants and dismissed M.N.'s claims with prejudice.

This appeal followed.

## Standard of Review

"The propriety of a grant of summary judgment is purely an issue of law which this Court reviews *de novo*." *Hill v. Ford Motor Co*., 277 S.W.3d 659, 664 (Mo. banc 2009) (citing *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp*., 854 S.W.2d 371, 376 (Mo. banc 1993)). "The criteria on appeal for testing the propriety of summary judgment are no different than those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.*

Summary judgment is appropriate if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007). A genuine issue of material fact exists if "the record shows two plausible, but contradictory, accounts of the essential facts and the 'genuine issue' is real, not merely argumentative, imaginary, or frivolous." *Id.* In determining whether a genuine issue of material fact exists, we review "the record in the light most favorable to the party against whom judgment was entered." *Id.* "Summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Hill*, 277 S.W.3d at 664.

## Analysis

M.N. asserts four points on appeal. In Point I, M.N. argues that the trial court erred in entering summary judgment in Defendants' favor "because the court misinterpreted the statute to require [M.N.] to establish [Defendants] knew or should have known of Ms. Davis' discriminatory conduct, in that this direct liability (negligence) standard is inapplicable to [M.N.'s] claim, and the

5

vicarious liability standard should apply." In Point II, M.N. argues that granting summary judgment for Defendants was improper even under the standard applied by the trial court because "there were genuine issues of material fact as to whether Respondents failed to take prompt remedial actions[.]" In Points III and IV, M.N. argues that if we agree reversal is warranted under Point I or II, we should nonetheless not affirm on other grounds. Specifically, M.N. asserts in Point III "that there were genuine issues of material fact as to whether the District may be held liable for Ms. Davis' conduct as her joint employer or principal." Alternatively, M.N. argues in Point IV that, "[r]egardless of whether Ms. Davis acted within the course and scope of her employment with Kelly, M.N.'s claim against Kelly should have survived summary judgment based on a theory of ratification recognized under Missouri law."

We agree with M.N. that the trial court applied the incorrect standard for determining Defendants' liability, warranting reversal.

*The trial court applied the incorrect standard to M.N.'s claim*

Section 213.065 prohibits discrimination in places of public accommodation, and in relevant part provides that:

> 1. All persons within the jurisdiction of the state of Missouri are free and equal and shall be entitled to the full and equal use and enjoyment within this state of any place of public accommodation, as hereinafter defined, without discrimination or segregation on the grounds of race, color, religion, national origin, sex, ancestry, or disability.

> 2. It is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person, or to attempt to refuse, withhold from or deny any other person, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation, as defined in section 213.010 and this section, or to segregate or discriminate against any such person in the use thereof on the grounds of race, color, religion, national origin, sex, ancestry, or disability.

6

§ 213.065.[4] The MHRA defines "discrimination" as "any unfair treatment based on race[.]" § 213.010(5). A "person" is defined to include "one or more individuals, corporations, partnerships, associations, organizations, . . . or other organized groups of persons[.]" § 213.010(14). "Places of public accommodation" are defined as "all places or businesses offering or holding out to the general public, goods, services, privileges, facilities, advantages or accommodations for the peace, comfort, health, welfare and safety of the general public or such public places providing food, shelter, recreation and amusement[.]" § 213.010(15).

Missouri courts have held that a public school is a place of public accommodation, *Subia ex rel. Doe v. Kan. City, Mo. Sch. Dist.*, 372 S.W.3d 43, 48 (Mo. App. W.D. 2012), and a school district is a "person" as used in section 213.065, *Appleberry ex rel. R.M.A. v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 430 (Mo. banc 2019). Thus, a student (such as M.N.) may prevail on a claim against a school district (such as Defendant District) and a corporation (such as Defendant Kelly Services) if the student proves that these entities, directly or indirectly, discriminated against him in his use of the public school system on the grounds of race. *See* § 213.065.2.

Recently, the Missouri Supreme Court addressed a student's claim of discrimination under section 213.065, and held that the elements of such a claim are:

(1) plaintiff is a member of a class protected by section 213.065;

(2) plaintiff was discriminated against in the use of a public accommodation (as defined by section 213.010); and

---

[4] The MHRA was amended in 2017, after M.N. filed this action. The parties do not dispute that the pre-amendment version of the MHRA applies in this case, and we agree. *See Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 794-95 (Mo. App. W.D. 2018) (determining that the 2017 amendments to the MHRA did not apply retroactively). Thus, all statutory references are to RSMo 2000 unless otherwise noted.

(3) plaintiff's status as a member of a protected class was a contributing factor[5] in that discrimination.[6]

*Appleberry*, 568 S.W.3d at 424-25.[7] Here, the trial court ruled that, in order to hold Defendants liable, M.N. had to prove an additional element: that they either knew or should have known that Davis would call "the student the offensive names that she did." The trial court relied on *Subia ex rel. Doe v. Kansas City, Missouri School District* as authority for requiring M.N. to prove this element to establish Defendants' liability. We find, however, that the plaintiff's claim and theory of liability in *Subia* was distinguishable from those of M.N., and thus the standard used to determine the defendant's liability in *Subia* is inapplicable here.

In *Subia*, the plaintiff student asserted a sex discrimination claim against a school district under section 213.065, alleging that he suffered repeated sexual assault and harassment at the hands of another student. 372 S.W.3d at 46. The plaintiff alleged that school administrators and staff responsible for supervising him and the perpetrator knew of the perpetrator's inappropriate and aggressive sexualized behavior, and despite this knowledge, permitted the perpetrator to use the restroom at the same time as the plaintiff, thereby providing the opportunity for the perpetrator to commit the assaults and harassment. *Id.* In determining the proper standard to address such a claim of student-on-student sexual harassment under section 213.065, this Court found relevant

---

[5] The Missouri Supreme Court applied the pre-amendment version of the MHRA to the student's claim.

[6] The Court also noted that, to prevail on his claim, the plaintiff would have to prove that "as a direct result of [the discriminatory] conduct, [he] sustained damage." *Appleberry*, 568 S.W.3d at 425. Compensatory damages for violations of section 213.065 may be awarded for humiliation and emotional distress. *Mo. Comm'n on Human Rights v. Red Dragon Rest., Inc*., 991 S.W.2d 161, 171 (Mo. App. W.D. 1999) ("The severity of the harm suffered by the plaintiff due to the deprivation of his or her civil rights should not be a criteri[on] for determining if the plaintiff is entitled to recover, but should be used to determine the amount of the damages."). Here, M.N. alleged Defendants' actions caused him "to suffer damages, including emotional distress, humiliation, embarrassment, [and] discomfort."

[7] In *Appleberry*, a transgender student brought a claim against a school district and school board under section 213.065, alleging that he was denied access to the school's locker rooms on the grounds of his sex. *See* 568 S.W.3d at 424. The trial court dismissed the student's petition, but the Missouri Supreme Court reversed, finding that the student stated a claim upon which relief could be granted. *See id.* at 428-29. The opinion in *Appleberry* was handed down after the parties in this case had completed summary judgment briefing, but before the trial court issued its judgment.

that the plaintiff was not attempting to hold the school district liable for the perpetrator's conduct, but was "instead trying to hold the School District liable for its own conduct—that is, its 'decision to remain idle in the face of known student-on-student harassment in its schools.'" *Id.* at 51 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641 (1999)). This Court analogized such a claim to that of co-worker sexual harassment in the employment context, and held that the liability standards should be comparable. *See id.* at 54 ("The standard for a public school district's liability for student-on-student sexual harassment under the MHRA should be the same as that for an employer's liability for co-worker sexual harassment under the MHRA[.]"). Thus, we held that a "school district can be held liable if it knew or should have known of the harassment and failed to take prompt and effective remedial action." *Id.*

Unlike the plaintiff's claim in *Subia*, M.N. has not asserted that he was the victim of student-on-student harassment, nor is he attempting to hold Defendants directly liable for their decision to remain idle in the face of known harassment. Rather, he seeks to hold Defendants vicariously liable for the offensive remarks of Davis solely by virtue of their relationship as employee/employer or agent/principal. Because M.N. seeks to impute liability on Defendants based purely on their legal relationships, we find that the trial court erred in applying the direct liability standard set forth in *Subia* and in requiring M.N. to prove that Defendants knew or should have known Davis would make racially derogatory comments to students in her classroom. Instead, the trial court should have applied a vicarious liability standard—specifically, the principles of *respondeat superior*—in determining whether Defendants were liable for Davis's conduct.

Both the *Subia* decision and federal case law support application of *respondeat superior* principles to M.N.'s claim. Under the theory of *respondeat superior*, an employer is held

9

"responsible for the misconduct of [its] employee where that employee is acting within the course [and] scope of his employment." *State ex rel. Blue Springs Sch. Dist. v. Grate*, 576 S.W.3d 262, 271 (Mo. App. W.D. 2019). In *Subia*, we noted that section 213.065 prohibits a person from "indirectly" discriminating against another in a place of public accommodation, thus the statute "contemplates liability for a party who does not personally engage in the discriminatory acts but who *is responsible*" for such acts. 372 S.W.3d at 51 (emphasis added). We also found that because the plaintiff in that case was "attempting to hold the School District liable for its own conduct, he did not need to plead facts establishing that the School District was vicariously liable for the perpetrator's conduct under the doctrine of *respondeat superior*." *Id.* Underlying that finding is the premise that a plaintiff asserting a public accommodation discrimination claim who is attempting to hold a defendant vicariously liable for the conduct of its employee must establish the defendant's liability under *respondeat superior* principles.

Furthermore, federal courts addressing public accommodation discrimination claims under section 42 U.S.C. § 2000a[8]—the federal law prohibiting discrimination in places of public accommodation—have held that an employer may be held vicariously liable for the discriminatory acts of its employees under a theory of *respondeat superior*.[9] *See, e.g.*, *Arguello v. Conoco, Inc.*, 207 F.3d 803, 810-12 (5th Cir. 2000) (applying the general agency principle that a master is subject to liability for the torts of his servants while acting in the scope of their employment, and holding

---

[8] 42 U.S.C. § 2000a(a) provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."

[9] Federal law guides our analysis to the extent that it is consistent with the MHRA. *See Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 252 n.4 (Mo. App. W.D. 2012) ("When reviewing cases under the MHRA, we are guided by both Missouri law and any [federal discrimination] case law that is consistent with Missouri law."); *Red Dragon Rest.*, 991 S.W.2d at 168 (addressing claim under section 213.065 and noting that "[w]hen Missouri has not addressed an issue under the MHRA, Missouri courts may look to federal decisions interpreting similar civil rights laws.").

10

that the trial court erred in granting summary judgment to the defendant company because the plaintiff customers had presented evidence that the store clerk was acting within the scope of her employment when she insulted them using racial epithets and profanity); *McKinnon v. Yum! Brands, Inc.*, No. 1:15-cv-00286-BLW, 2017 WL 3659166, at * 7 (D. Idaho Aug. 24, 2017) (concluding that the doctrine of *respondeat superior* is applicable to § 2000a claims and thus the plaintiff customers could assert claims of racial discrimination in a public accommodation against the restaurant owner for the acts of its employee).

Although M.N. has indicated an alternative vicarious liability standard may apply to his claim—specifically the framework established in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)—we disagree. In *Faragher*, which involved a claim of employment discrimination under Title VII, the U.S. Supreme Court determined under what circumstances an employer could be held vicariously liable for its supervisory employee's harassment of a subordinate employee.[10] *See* 524 U.S. at 780. We find that *Faragher*'s application is limited to employment discrimination claims involving the conduct of supervisory employees, and is not applicable to a public accommodation discrimination claim. *See Arguello*, 207 F.3d at 809-10 (declining to apply the *Faragher* framework for analyzing employer liability to a claim of public accommodation discrimination); *McKinnon*, 2017 WL 3659166, at *6-7 (same).

---

[10] The Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 524 U.S. at 807. However, this liability is not automatic, as "a defending employer may raise an affirmative defense to liability or damages," which "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* The *Faragher* framework for determining employer liability does not involve an analysis of whether the supervisory employee was acting within the scope of his or her employment. M.N. contends that the student-teacher relationship is akin to the relationship between a supervisor and subordinate employee, and thus the *Faragher* standard should apply.

11

As stated above, whether Defendants are liable for the conduct of Davis is to be determined by applying the principles of *respondeat superior*. Because the trial court failed to apply these principles, and instead incorrectly applied a direct negligence standard, Point I is granted.[11]

*Applying the principles of* respondeat superior*, Defendants are not entitled to summary judgment*

Anticipating that *respondeat superior* principles apply to M.N.'s claim, Defendants asserted in their motion for summary judgment that Davis was not an employee of the District and was not acting within the scope of her employment for Kelly Services when she made the offensive comments to M.N.[12] The trial court did not address this argument in its judgment. In Point III, M.N. argues that we cannot affirm on this ground because there were genuine issues of material fact relating to whether the District was Davis's employer or principal and whether Davis was acting in the course and scope of her agency or employment.[13] We agree with M.N. that the trial court's judgment cannot be affirmed on the grounds that, as a matter of law, Davis was not an employee or agent of the District and she was not acting within the scope of her agency or employment.

Although Defendants assert that the District cannot be liable for Davis's conduct because "[a]t no time was Ms. Davis ever an employee of the school district," this argument ignores that

---

[11] Because we find that the trial court applied the incorrect standard, we need not address Point II, in which M.N. argues that granting summary judgment was inappropriate even under the standard applied by the trial court.

[12] Defendants conceded that Davis was an employee of Kelly Services, asserting that "Ms. Davis was Kelly's employee and assigned to the school district pursuant to a contract between Kelly and the school district."

[13] *See Mo. Emp'rs Mut. Ins. Co. v. Nichols*, 149 S.W.3d 617, 623 (Mo. App. W.D. 2004) (appellate courts will "affirm the trial court's grant of summary judgment if it could have been based on any ground raised in the motion and supported by the summary judgment record"). Although M.N. argues on appeal that the *Faragher* standard applies, and under that standard the court need not determine whether Davis was acting within the course and scope of her employment, M.N. nonetheless asserts there were "issues of fact as to whether Ms. Davis was acting in the course and scope of her agency."

Davis was not required to be an "employee" of the District in order to impute liability to the District for her actions. "An employer is liable under the theory of *respondeat superior* for damages attributable to the misconduct of an employee *or* agent acting within the course and scope of the employment *or* agency." *Blunkall v. Heavy & Specialized Haulers, Inc.*, 398 S.W.3d 534, 542 (Mo. App. S.D. 2013) (emphasis in original) (internal marks omitted) (quoting *McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo. banc 1995)). Thus, even if Davis were not an "employee" of the District, the District could still be vicariously liable for her actions if she were found to be an "agent" of the District. *See id.* at 546.

We cannot find from the summary judgment record before us that, as a matter of law, Davis was not an agent or employee of the District. For example, the record reflects that the District had the power to bar Davis from accepting future substitute teaching assignments in the District, and the District's 2015 Annual Employee Compliance Modules twice defined "staff member" to include "substitute employees." "[A]s the Missouri Supreme Court has noted, generally the relationship of principal-agent or employer-employee is a question of fact to be determined by the jury when, from the evidence adduced on the question, there may be a fair difference of opinion as to the existence of the relationship." *Gibbs v. Blockbuster, Inc.*, 318 S.W.3d 157, 175 (Mo. App. E.D. 2010) (internal marks omitted) (quoting *Johnson v. Bi-State Dev. Agency*, 793 S.W.2d 864, 867 (Mo. banc 1990)). "Where there is uncertainty arising either from conflict in the testimony or because the undisputed facts may lead reasonable persons to draw different conclusions as to whether a master-servant relationship exists, the question is not one of law but of fact to be settled by the jury." *Id.* Based on this record, we find that a reasonable person may draw different conclusions as to whether an agency or employment relationship existed between Davis and the District.

13

Similarly, we find that the record does not support a finding, as a matter of law, that Davis was not acting within the scope of any agency or employment relationship. *See Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869, 872 (Mo. App. W.D. 2008) ("If reasonable minds could differ on the question of whether an employee was acting within [the] scope of his or her employment, then the question is one of fact to be settled by [the] jury."). Our conclusion is confirmed by Defendants' acknowledgment at oral argument that, if *respondeat superior* principles were applied to M.N.'s claim, the assessment of whether an agency relationship existed between Davis and the District and whether Davis's actions were within the scope of her agency or employment involve factual determinations that would preclude summary judgment.

Because we find that genuine issues of material fact exist as to whether Davis was an agent or employee of the District and whether she was acting within the scope of any agency or employment relationship with the District or Kelly Services, we cannot affirm the trial court's grant of summary judgment on this ground.

*We need not address M.N.'s theory that Kelly Services ratified Davis's conduct*

In his fourth point, M.N. asserts that "[r]egardless of whether Ms. Davis acted within the course and scope of her employment with Kelly, M.N.'s claim against Kelly should have survived summary judgment based on a theory of ratification recognized under Missouri law." Specifically, M.N. argues that he presented evidence that "Kelly ratified [Davis's] conduct after the fact" by continuing to employ her and offer her substitute teaching assignments at other schools, and this established "genuine issues of material fact as to whether Kelly was liable for ratifying Ms. Davis's conduct after the October 9, 2015 incident." Based on our resolution of M.N.'s other points on appeal, however, we find it unnecessary to address this argument.

14

## Conclusion

For the reasons described above, we reverse the trial court's grant of summary judgment in favor of Defendants and remand for further proceedings consistent with this opinion.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.